## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

              Plaintiff,

    v.

MARIA DE LA LUZ RAMIREZ
LOPEZ; LYNN MOSTOLLER, as
Special Administrator of the Estate of
Calos Rafael Velazquez; EDWIN
QUINONES, a Personal Representative
of the Estate of Marilyn Velazquez;
THE ESTATE OF ROBERTO
VELAZQUEZ; and THE ESTATE OF
A.J.V., a minor,

              Defendants.

Case No.

## COMPLAINT IN INTERPLEADER

Plaintiff, The Prudential Insurance Company of America ("Prudential"), by

and through its undersigned attorneys, for its Complaint in Interpleader alleges as

follows:

### PARTIES

1.    Prudential is an insurance company organized and existing under the

laws of the State of New Jersey with its principal place of business in New Jersey.

Prudential is duly authorized to do business in New Mexico.

- 1 -

2.     Upon information and belief, Maria de la Luz Ramirez Lopez ("Maria") is an adult citizen of the foreign state of Mexico and domiciled in the city of Tlaquepaque.

3.     Upon information and belief, there has been a proceeding commenced in the Second Judicial District Court, County of Bernalillo, New Mexico, to administer the Estate of Carlos Rafael Velazquez, who was an adult citizen of New Mexico and domiciled in Sandoval County at the time of his death. Upon information and belief, application was made to appoint Lynn Mostoller ("Mostoller") as the Special Administrator of the Estate of Carlos Rafael Velazquez.

4.     Upon information and belief, there has been a proceeding commenced in the Second Judicial District Court, County of Bernalillo, New Mexico, to administer the Estate of Marilyn Velazquez, who was an adult citizen of New Mexico and domiciled in Sandoval County at the time of her death. Upon information and belief, application was made to appoint Edwin Quinones ("Quinones") as the Personal Representative of the Estate of Marilyn Velazquez.

5.     Upon information and belief, no proceeding has been commenced to administer the Estate of Roberto Velazquez, deceased, who was an adult citizen of New Mexico and domiciled in Sandoval County at the time of his death.

6.      Upon information and belief, no proceeding has been commenced to administer the Estate of A.J.V., deceased, who was a minor citizen of New Mexico and domiciled in Sandoval County at the time of his death.

## JURISDICTION AND VENUE

7.      This Court has original federal question jurisdiction under the provisions of 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions arising under the laws of the United States. At issue are life insurance plan benefits provided to the Department of Veterans Affairs pursuant to the Servicemembers' Group Life Insurance Act, 38 U.S.C. § 1965 *et seq*.

8.      This Court also has jurisdiction under 28 U.S.C. § 1332, in that the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00. Prudential is a New Jersey citizen for diversity purposes, and upon information and belief, the Defendants are citizens of the State of New Mexico and the foreign state of Mexico.

9.      This Court also has jurisdiction under 28 U.S.C. § 1335 in that the Defendants are of diverse citizenship and the amount in controversy exceeds $500.00.  There is minimal diversity between the claimants under State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523 (1967).  Upon information and belief, the

Defendants are citizens of the State of New Mexico and the foreign state of Mexico.

10.    Venue is proper in this federal district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.  Venue is also proper in this Court pursuant to 28 U.S.C. § 1397 because one or more of the Defendants resides in this judicial district.

## CAUSE OF ACTION IN INTERPLEADER

11.    Prudential, through the Office of Servicemembers' Group Life Insurance ("OSGLI"), provides group life insurance benefits pursuant to the Servicemembers' Group Life Insurance ("SGLI") statute, 38 U.S.C. § 1965 *et seq.*, to the United States Department of Veterans Affairs under group policy number G-32000 ("SGLI Plan"). *A copy of the SGLI Plan is attached hereto as* **Exhibit A**.

12.    As an eligible veteran of the United States Army, Carlos Rafael Velazquez (the "Insured") received veterans' group life insurance ("VGLI") coverage under the SGLI Plan (the "VGLI Coverage").

13.    On or about December 2, 2019, via OSGLI's website, the Insured designated the following individuals as co-Primary beneficiaries, each entitled to receive the specified percentage of the VGLI Plan death benefit:

- 4 -

- Roberto Velazquez, individual, 35%;

- A.J.V., individual, 35%; and

- Maria de la Luz Ramirez Lopez, individual, 30%.

*A copy of the December 2, 2019 beneficiary designation confirmation letter sent to the Insured is attached hereto as* **Exhibit B**.

14.     Upon information and belief, the Insured died on December 25, 2019. *A copy of the Certificate of Death is attached hereto as* **Exhibit C**.

15.     As a result of the death of the Insured, VGLI Coverage death benefits in the amount of $400,000.00 became due to a beneficiary or beneficiaries (the "Death Benefit"), and Prudential concedes liability to that effect.

16.     Upon information and belief, the Insured caused the deaths of his wife, Marilyn Velazquez ("Marilyn"), and sons, Roberto Velazquez ("Roberto") and A.J.V., a minor ("A.J.V."), before taking his own life on December 25, 2019, in what is believed to have been a murder-suicide event.

17.     Pursuant to federal common law, when federal law is silent on issues primarily of state concern, federal courts may "borrow" state law principles that are not inconsistent with federal law.

18.     Because there is no federal "simultaneous death" law, state law should be applied in this instance.

19.     New Mexico Statutes Annotated § 45-2-702 (New Mexico's "simultaneous death" statute) provides, in relevant part:

> [F]or purposes of a provision of a governing instrument that relates to an individual surviving an event, including the death of another individual, an individual who is not established by clear and convincing evidence to have survived the event by one hundred twenty hours is deemed to have predeceased the event.

NM Stat Ann § 45-2-702(B).

20.     Because Roberto and A.J.V. died within one hundred twenty hours of the Insured, pursuant to NM Stat. Ann. § 45-2-702, they are deemed to have predeceased the Insured.

21.     Pursuant to the SGLI Statute:

> Any amount of insurance under this subchapter in force on any member or former member on the date of the insured's death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of the insured's death, in the following order of precedence: First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received prior to death . . .

38 U.S.C. § 1970(a).

22.     Because Roberto and A.J.V. are deemed to have predeceased the Insured, the Death Benefit would be payable to Maria, as the sole surviving primary beneficiary, in accordance with 38 U.S.C. § 1970(a) and the December 2, 2019 designation.

- 6 -

23.     By Claim for Death Benefits form received by Prudential on or about May 7, 2020, Maria asserted a claim for the Death Benefit.[1]   A copy of the Claim for Death Benefits form is attached hereto as **Exhibit D**.

24.     Upon information and belief, by "Petition for Formal Appointment of Special Administrator" filed on or about May 28, 2020 in the Second Judicial District Court, County of Bernalillo, State of New Mexico (case number D-202-PB-2020-00302), Quinones, Marilyn's brother, requested, among other relief, that Special Administrator Mostoller be appointed to investigate, ascertain, marshal and preserve life insurance policies of the Insured. *A copy of the Petition for Formal Appointment of Special Administrator is attached hereto as* **Exhibit E**.

25.     Upon information and belief, on or about June 15, 2020, Quinones filed a "Petition for Declaratory Judgment, For Injunctive Relief Against Nominal Defendant Prudential Insurance Company of America, and Request for

---

[1] Upon information and belief, the Claim for Death Benefits form was completed and emailed to Prudential by someone assisting and acting on Maria's behalf. Upon information and belief, Maria's daughter's name, Maria del Pilar Bautista Bellido, was mistakenly entered in section 7 on the form instead of Maria's name. Based on the totality of the circumstances, including the fact that Maria signed the form, payment to Maria's bank account was requested, and subsequent communications between Prudential's counsel and Maria, her daughter, and the representative, Prudential construes the Claim for Death Benefits form as a claim by Maria for the Death Benefit.

111510420.1

Interpleader" in case number D-202-PB-2020-00302 seeking, *inter alia*, to legally restrain Prudential from distributing the Death Benefit and a Declaration that the Estates of Carlos, Marilyn, Roberto and/or A.J.V. are entitled to the Death Benefit based on various legal theories stemming from the Insured's involvement in the deaths of Marilyn, Roberto, and A.J.V. *A copy of the June 15, 2020 Petition is attached hereto as **Exhibit F**.*

26.     There have been no other claims to the Death Benefit.

27.     No portion of the Death Benefit has been paid.

28.     Under the circumstances, Prudential cannot determine factually or legally who is entitled to the Death Benefit. By reason of the actual or potential claims of the interpleading parties, Prudential is or may be exposed to multiple liability.

29.     Prudential is ready, willing and able to pay the Death Benefit, plus applicable interest, if any, in accordance with the terms of the SGLI Plan to whomever this Court shall designate.

30.     As a mere stakeholder, Prudential has no interest (except to recover its attorneys' fees and cost of this action) in the Death Benefit and respectfully requests that this Court determine to whom said benefits should be paid.

31.     Prudential accordingly will deposit with the Court the Death Benefit, plus applicable interest, if any, for disbursement in accordance with the judgment of this Court, or pursuant to an Order of the Court, will pay the Death Benefit directly to whomever this Court determines to be entitled to the proceeds.

32.     There is no fraud or collusion between Prudential and any of the other parties.  Prudential brings this Complaint in Interpleader of its own free will and to avoid being vexed and harassed by conflicting and multiple claims.

**WHEREFORE**, Prudential prays that the Court enter judgment:

(a)     appointing suitable individuals as representatives of the Estates of Roberto and A.J.V. for the purposes of litigating their Estates' claims to the Death Benefit;

(b)     requiring the Defendants to answer this Complaint in Interpleader and litigate their claims between themselves for the Death Benefit;

(c)     requiring the Defendants to settle and adjust between themselves, or upon their failure to do so, this Court settle and adjust the claims and determine to whom the Death Benefit should be paid;

(d)     permitting Prudential to deposit the amount of the Death Benefit, plus applicable interest, if any, into the Court or as this Court otherwise directs to be subject to the Order of this Court and to be paid out as this Court shall direct;

(e)     discharging Prudential from any and all further liability to the Defendants that relates in any way to the Insured's coverage under the SGLI Plan and/or the Death Benefit upon payment of the Death Benefit into the Registry of this Court or as otherwise directed by this Court;

(f)     enjoining the Defendants from instituting or prosecuting any proceeding in any state or United States court in connection with payment of the Death Benefit or otherwise in connection with the Insured's coverage under the SGLI Plan;

(g)     awarding Prudential its attorneys' fees and costs in their entirety; and

(h)     awarding Prudential any other and further relief that this Court deems just and proper.

Dated:     June 16, 2020          LEWIS ROCA ROTHGERBER
                                  CHRISTIE LLP


                                  By:/s/ Nicole G. True
                                      Nicole G. True (152093)
                                      NTrue@lrrc.com

                                  201 East Washington Street, Suite 1200
                                  Phoenix, AZ  85004
                                  Telephone: 602.262.5311
                                  Facsimile:  602.262.5747

                                  Attorneys for Plaintiff

EXHIBIT A

# The Prudential Insurance Company of America

(hereinafter called the Insurance Company)

AMENDMENT TO GROUP POLICY NO. G-32000
(to be attached to and made a part of the Group Policy)

The Policyholder and the Insurance Company hereby agree that Group Policy No. G-32000, which became effective September 29, 1965, is hereby amended in its entirety, effective January 1, 2007 to provide that, all terms and provisions previously made a part hereof shall be replaced by the terms and provisions set forth on pages 2 through 29, inclusive, of this amendment.

It is agreed that such changes shall form a part of the Group Policy, but not unless both the Policyholder and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date ........ 7/9 / 2007 .............          By ...................................................
                                                          Assistant Secretary

Date ...... 6 / 22 / 2007 .........          ...................................................
                                                          Secretary of Veterans Affairs
                                                          (Policyholder)

ORD 31666-186

Policyholder: Secretary of Veterans Affairs

Group Policy No.: G-32000

The Insurance Company, in consideration of the payment of premiums as provided in the Group Policy, including payment by the Policyholder of the additional costs under Section 6 of Article I of the Group Policy, hereby agrees to pay benefits in accordance with and subject to the terms of the Group Policy.

The date of issue of the Group Policy was September 29, 1965.

The Group Policy was delivered in Washington, District of Columbia.

## ARTICLE I - GENERAL PROVISIONS

Section 1.   DEFINITION OF CERTAIN TERMS USED IN THE GROUP POLICY

(1) The term "active duty" means—

(A) full-time duty in the Armed Forces, other than active duty for training;

(B) full-time duty (other than for training purposes) as a commissioned officer of the Regular or Reserve Corps of the Public Health Service;

(C) full-time duty as a commissioned officer of the National Oceanic and Atmospheric Administration; and

(D) full-time duty as a cadet or midshipman at the United States Military Academy, United States Naval Academy,          United States Air Force Academy, or the United States Coast Guard Academy.

(2) The term "active duty for training" means—

(A) full-time duty in the Armed Forces performed by Reserves for training purposes;

(B) full-time duty for training purposes performed as a commissioned officer of the Reserve Corps of the Public Health Service;

(C) full-time duty as a member, cadet, or midshipman of the Reserve Officers Training Corps while attending field training     or practice cruises; and

(D) in the case of members of the Army National Guard or Air National Guard of any State, full-time duty under sections 316, 502, 503, 504, or 505 of title 32, United States Code.

(3) The term "inactive duty training" means—

(A) duty (other than full-time duty) prescribed or authorized for Reserves (including commissioned officers of the Reserve Corps of the Public Health Service) which duty is scheduled in advance by competent authority to begin at a specific time and place; and

(B) in the case of a member of the Army National Guard or Air National Guard of any State, such term means duty (other than full-time duty) which is scheduled in advance by competent authority to begin at a specific time and place under sections 316, 502, 503, 504, or 505 of title 32, United States Code.

(4) The terms "active duty for training" and "inactive duty training" do not include duty performed as a temporary member of the Coast Guard Reserve, and the term "inactive duty training" does not include (i) work or study performed in connection with correspondence courses, or (ii) attendance at an educational institution in an inactive status.

Article I (Continued)

(5) The term "member" means—

    (A) a person on active duty, active duty for training, or inactive duty training in the uniformed services in a commissioned, warrant, or enlisted rank or grade, or as a cadet or midshipman at the United States Military Academy, United States Naval Academy, United States Air Force Academy, or the United States Coast Guard Academy;

    (B) a person who volunteers for assignment to the Ready Reserve of a uniformed service and is assigned to a unit or position in which he may be required to perform active duty, or active duty for training, and each year will be scheduled to perform at least twelve periods of inactive duty training that is creditable for retirement purposes under chapter 1223 of title 10 ( or under chapter 67 of that title as in effect before the effective date of the Reserve Officer Personnel Management Act);

    (C) a person who volunteers for assignment to a mobilization category in the Individual Ready Reserve, as defined in section 12304(i)(1) of title 10; and

    (D) a member, cadet or midshipman of the Reserve Officers Training Corps while attending field training or practice cruises.

(6) The term "uniformed services" means the Army, Navy, Air Force, Marine Corps, Coast Guard, the commissioned corps of the Public Health Service, and the commissioned corps of the National Oceanic and Atmospheric Administration.

(7) The term "Armed Forces" means the Army, Navy, Air Force, Marine Corps, Coast Guard and the Reserves thereof.

(8) The term "Reserves" means the Army Reserve, the Army National Guard, the Naval Reserve, the Marine Corps Reserve, the Air Force Reserve, the Air National Guard, the Coast Guard Reserve (other than a temporary member of the Coast Guard Reserve), the Reserve Corps of the Public Health Service, and the Reserve Officers Training Corps. References in the Group Policy to "Reserves" shall mean any of the foregoing.

(9) The term "veteran" means a former member who has been separated or released from duty with a uniformed service, including a former member who has been separated or released from assignment to the Ready Reserve of a uniformed service or released from assignment to a mobilization category in the Individual Ready Reserves as defined in section 12304(i)(1) of title 10.

(10) The term "Servicemembers' Group Life Insurance" means the life insurance protection provided under Article II of the Group Policy and includes all life insurance protection under Article II of the Group Policy as constituted prior to January 1, 2007.

(11) The term "Veterans' Group Life Insurance" means the life insurance protection provided under Article III of the Group Policy and includes all life insurance protection under Article III of the Group Policy as constituted prior to January 1, 2007.

(12) The term "Office" means the Office of Servicemembers' Group Life Insurance which is the administrative office established by the Insurance Company for the Group Policy.  The address of the Office is 290 W. Mt. Pleasant Avenue, Livingston, NJ 07039. The Insurance Company may change the address of the Office upon three months notice in writing to, and approval by, the Policyholder.

(13) Wherever in the Group Policy a date is used or appears, it shall mean, with respect to an individual member or veteran, that date determined at the location of the member or veteran, except that the effective date and time for any change in benefits  under the Servicemembers' Group Life Insurance Program shall be based on the date and time according to the time zone immediately west of the International Date Line.

(14) Wherever in the Group Policy a personal pronoun in the masculine gender is used or appears, it shall be taken to include the feminine also, unless the context clearly indicates the contrary.

(15) The term "policy year" as used in the Group Policy means the period beginning with the date of issue of the Group Policy, or with a subsequent policy anniversary, and ending with the date immediately preceding the next policy anniversary.  During the continuance of the Group Policy, policy anniversaries are deemed to occur on July 1 of each year.  If and when the Group Policy shall be discontinued, the day immediately following the date of such discontinuance shall be deemed to be a policy anniversary.

(16)  The term "insurable dependent" means
    A) the member's spouse, or
    B) the member's child who is unmarried and
       i)  who is under the age of eighteen; or
      ii)  who, before attaining the age of eighteen years, became permanently incapable of self-support; or
      iii)  who, after attaining the age of eighteen years and until the completion of education or training (but not after attaining the age of twenty-three years), is pursuing a course of instruction at an approved educational institution;
      iv)  and who is a legitimate child, a legally adopted child, a stepchild who is a member of the member's household, or an illegitimate child but, as to the alleged father, only if acknowledged in writing signed by him, or if h has been judicially ordered to contribute to the child's support or has been judicially decreed to be the father of such child, or if he is otherwise shown by evidence satisfactory to the Secretary to be the father of such child.

(17)  The term "Family Group Life Insurance" means the life insurance protection provided under Article VI of the Group Policy and includes all life insurance protection under Article VI of the Group Policy as constituted prior to January 1, 2007.

Section 2.   LIFE INSURANCE DEATH BENEFIT

Upon receipt by the Office of due proof in writing that any person died while insured under the Group Policy for Servicemembers' Group Life Insurance, Family Group Life Insurance or Veterans' Group Life Insurance, the Office shall, except as provided in Section 10 of this Article I and subject to the other terms of the Group Policy, pay the amount for which such person is insured under the Group Policy.  Payment shall be made to the person's designated beneficiary surviving at the person's death or otherwise as provided in Section 3 of this Article I upon receipt of such proof.  Payment shall include interest at a rate to be determined by the Insurance Company.

In no event shall the total amount of Servicemembers' Group Life Insurance, or Veterans' Group Life Insurance, or a combination thereof, exceed $400,000.

If a person is found to have coverage under both Article II and Article III and the total amount exceeds the highest amount allowed under Article II, coverage will be reduced retroactively to the highest amount allowed under Article II with a refund of extra premiums paid at the higher rate.

If any deduction authorized under 38 U.S.C. 1969(a) from the base or other pay of a member a) who is insured for Servicemembers' Group Life Insurance or b) whose spouse is insured under Family Group Life Insurance under the Group Policy is neither so deducted nor otherwise paid, the amount thereof shall, upon notification by the Policyholder prior to payment of the claim, be deducted from the proceeds of insurance payable under the Group Policy as a death benefit and credited to the Group Policy as a premium payment.

If a veteran who is insured for Veterans' Group Life Insurance dies while in the Grace Period, as defined in Section 5 (C) (2) of this Article I, the amount of the unpaid premiums for such insurance shall be deducted from the proceeds of the insurance payable under the Group Policy as a death benefit and shall be credited to the Group Policy as a premium payment.

If a veteran who was mentally incompetent on the date he becomes insured for Veterans' Group Life Insurance dies within one year of such date and while such insurance is deemed to be continued in accordance with 38 U.S.C. 1977(c) without premium payment therefor, the amount of unpaid premiums for such insurance may be deducted from the proceeds of the insurance payable under the Group Policy as a death benefit and credited to the Group Policy as a premium payment.

Section 3.   BENEFICIARIES

A member insured for Servicemembers' Group Life Insurance or a veteran or member of the Individual Ready Reserve or Inactive National Guard insured for Veterans' Group Life Insurance may designate a beneficiary and may, from time to time, change his designation only by filing written notice thereof, over his signature, prior to his death with his uniformed service or with the Office as required by the further provisions of this Section.  Consent of the beneficiary shall not be requisite to any change of beneficiary.

Article I (Continued)

With respect to the beneficiary for Family Group Life Insurance, the member will be the designated beneficiary. In the event of the member's death before payment can be made, payment will be made to the member's beneficiary(ies) according to this Section 3.

Except as provided below, any designation of beneficiary made by any member shall apply to the member's Full-Time Coverage or Part-Time Coverage, if any, under Article II of the Group Policy until revoked, changed or terminated. Any designation of beneficiary made by any member shall automatically cease to be effective (1) if his insurance under the Group Policy terminates following separation or release from all duty in a uniformed service, (2) if the member enters on duty in another uniformed service, (3) if the member re-enters on duty in the same uniformed service more than one calendar day after separation or release from all duty in that uniformed service, (4) in the case of a member insured under Full-Time Coverage when such insurance terminates or (5) except as provided in the next following paragraph, if the member becomes insured for Veterans' Group Life Insurance in accordance with Article III of the Group Policy. However, (2) and (3) above shall not apply to any insurance continued under the Group Policy during the one hundred twenty days after separation or release from duty which is not replaced because the member upon entry or re-entry on duty in a uniformed service during that one hundred twenty day period did not reacquire insurance or reacquired a lesser amount of insurance under Sections 1, 2 and 3 of Article II of the Group Policy.

If Veterans' Group Life Insurance on the life of a veteran or member of the Individual Ready Reserve or Inactive National Guard becomes effective on the day following termination of his Servicemembers' Group Life Insurance, any designation of beneficiary in effect for his Servicemembers' Group Life Insurance at termination thereof shall be considered a designation of beneficiary for his Veterans' Group Life Insurance, but such designation shall cease to be effective if the person revokes it or designates a beneficiary for Veterans' Group Life Insurance in accordance with the other provisions of this Section. In any event such designation shall cease to be effective on the sixty-first day after the effective date of the person's Veterans' Group Life Insurance, unless the person is then incompetent in which event it may continue until the incompetency is removed.

Any beneficiary designation made by a person insured for Veterans' Group Life Insurance in accordance with Article III of the Group Policy shall automatically cease to be effective if his Veterans' Group Life Insurance terminates. A beneficiary designation made by a person for Veterans' Group Life Insurance shall not have any application with respect to any amount of Servicemembers' Group Life Insurance for which the person may thereafter become insured in accordance with the provisions of Article II of the Group Policy. The beneficiary designation made for Veterans' Group life Insurance may, however, supersede a prior Servicemembers' Group Life Insurance designation during the one hundred twenty day extension of that coverage if the individual so designates in his Veterans' Group Life Insurance application form.

Written notice of a beneficiary designation or revocation of a beneficiary designation must be made (1) to the Office in the case of (a) a veteran or member of the Individual Ready Reserve or Inactive National Guard insured for Veterans' Group Life Insurance in accordance with Article III of the Group Policy, (b) any other member while he is insured for Servicemembers' Group Life Insurance after his separation or release from or termination of duty, and (2) to the member's uniformed service in all other instances. A designation or change of beneficiary shall take effect only if it is made and received as required in (1) or (2) of this paragraph, as the case may be, prior to the death of the member or veteran or member of the Individual Ready Reserve or Inactive National Guard, and shall be effective as of the date of such receipt.

If at the death of any member or veteran or member of the Individual Ready Reserve or Inactive National Guard insured under the Group Policy, there shall be more than one designated beneficiary, then, unless such person shall have specified their      respective shares, such beneficiaries shall share equally. The rights and interests of any designated beneficiary are automatically terminated when he predeceases the member or veteran or member of the Individual Ready Reserve or Inactive National Guard, and his share, unless the member or veteran or member of the Individual Ready Reserve or Inactive National Guard otherwise specified in his written notice, shall be distributed equally among surviving designated beneficiaries, or entirely to the survivor. If at the death of the member or veteran or member of the Individual Ready Reserve or Inactive National Guard, there be no surviving designated beneficiary, then the amount of the insurance payable for which there is no surviving designated beneficiary shall be payable to the person or persons listed below surviving at the date of the insured person's death in the following order of precedence:

    (1)  To the widow or widower of the member or veteran or member of the Individual Ready Reserve or Inactive National Guard;

Article I (Continued)

    (2) If neither of the above, to the child or children of the member or veteran or member of the Individual Ready Reserve or Inactive National Guard, in equal shares, and descendants of deceased children by representation;

    (3) If none of the above, to the parents of such member or veteran or member of the Individual Ready Reserve or Inactive National Guard, in equal shares, or the survivor of them;

    (4) If none of the above, to the duly appointed executor or administrator of the estate of such member or veteran or member of the Individual Ready Reserve or Inactive National Guard;

    (5) If none of the above, to other next of kin of such member or veteran or member of the Individual Ready Reserve or Inactive National Guard as may be determined by the Office to be entitled under the laws of domicile of such member or veteran or member of the Individual Ready Reserve or Inactive National Guard. Payment to any person by virtue of the preceding sentence shall be a bar to recovery by any other person.

If any person otherwise entitled to payment as a designated beneficiary or under the order of precedence set forth in this Section does not make claim therefor within one year after the death of the member or veteran or member of the Individual Ready Reserve or Inactive National Guard, or if payment to such person within that period is prohibited by Federal statute or regulation, payment shall be made in the order of precedence as if such person had predeceased the member or veteran or member of the Individual Ready Reserve or Inactive National Guard. Payment to any person by virtue of the preceding sentence shall be a bar to recovery by any other person.

If, within two years after the death of the member or veteran or member of the Individual Ready Reserve or Inactive National Guard, no claim for payment has been filed by any person entitled thereto as a designated beneficiary or under the order of precedence set forth in this Section, and neither the Policyholder nor the Office has received any notice that any such claim will be made, payment may be made to a claimant as may in the judgment of the Policyholder be equitably entitled thereto, and such payment shall be a bar to recovery by any other persons.

A beneficiary designation and settlement option filed by a member with his uniformed service will be effective with respect to any increased insurance under the Group Policy. The insurance shall be settled in the same proportionate amount as the portion designated for such beneficiary or beneficiaries based on the amount of insurance heretofore in effect.

Payment of claim under the Group Policy made directly to a minor widow or widower on his or her own behalf pursuant to 38 U.S.C. 1970(f) shall be a complete acquittance to the Insurance Company.

Pursuant to 38 U.S.C. 1970(g), payment of benefits due or to become due under the Group Policy made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to (1) collection of amounts not deducted from the member's pay, or collected from him by the Secretary concerned under 38 U.S.C. 1969(a); (2) deduction of unpaid premiums from the insurance proceeds pursuant to 38 U.S.C. 1977(c) in the case of certain veterans who were mentally incompetent when becoming insured for Veterans' Group Life Insurance under Article III of the Group Policy; (3) deduction of unpaid premiums from the insurance proceeds when a veteran dies with unpaid premiums while in the Grace Period defined in Section 5 (C) (2) of this Article I; (4) levy under sub-chapter D of chapter 64 of the Internal Revenue Code of 1954 (relating to the seizure of property for the collection of taxes); and (5) the taxation of any property purchased in part or wholly out of such payments.

Section 4.   MODES OF SETTLEMENT

A member insured for Servicemembers' Group Life Insurance or a veteran or member of the Individual Ready Reserve or Inactive National Guard insured for Veterans' Group Life Insurance under the Group Policy may elect settlement of insurance either in a lump sum or in thirty-six equal monthly installments.

A member whose spouse is insured under Family Group Life Insurance under the Group Policy may elect settlement of the insurance on the spouse either in a lump sum or in thirty-six equal monthly installments.

A benefit payable on a child of a member under Family Group Life Insurance is payable in a lump sum only.

Any election or revocation of such a settlement must be made by the member or veteran or member of the Individual Ready Reserve or Inactive National Guard giving written notice, over his signature, and delivered prior to his death, to his uniformed service or to the Office as required by the further provisions of this Section.

Except as provided below, any election made by a member shall apply to the member's Full-Time Coverage or Part-Time Coverage, if any, under Article II of the Group Policy until revoked, changed, or terminated. Any election made by any member for Servicemembers' Group Life Insurance shall automatically cease to be effective (1) if his insurance under the Group Policy terminates following separation or release from all duty in a uniformed service, (2) if the member enters on duty in another uniformed service, (3) if the member re-enters on duty in the same uniformed service more than one calendar day after separation or release from all duty in that uniformed service, (4) in the case of a member insured under Full-Time Coverage when such insurance terminates, or (5) if the member becomes insured for Veterans' Group Life Insurance in accordance with Article III of the Group Policy. However, (2) and (3) above shall not apply to any insurance continued under the Group Policy during the one hundred and twenty days after separation or release from duty which is not replaced because the member upon entry or re-entry on duty in a uniformed service during that one hundred twenty day period did not reacquire insurance or reacquired a lesser amount of insurance under Section 1, 2 and 3 of Article II of the Group Policy.

Any election made by a veteran or member of the Individual Ready Reserve or Inactive National Guard insured for Veterans' Group Life Insurance in accordance with Article III of the Group Policy shall automatically cease to be effective if his Veterans' Group Life Insurance terminates. Any election made by a veteran or member of the Individual Ready Reserve or Inactive National Guard for Veterans' Group Life Insurance shall not have any application with respect to any amount of Servicemembers' Group Life Insurance for which the veteran may thereafter become insured in accordance with the provisions of Article II of the Group Policy.

Any election made by a member shall apply to the member's spouse coverage, if any, under Article VI of the Group Policy until revoked, changed, or terminated. Any election made by a member for spouse coverage under Family Group Life Insurance shall automatically cease to be effective once the spouse coverage terminates. Should a member re-apply for spouse coverage but for a lesser amount during the one hundred twenty days following the member's separation or release from all duty in the uniformed service, or the one hundred twenty days following the member's election to terminate spouse coverage, then the original election will remain in effect for the amount of insurance not re-applied for until the end of the one hundred twenty day period.

Written notice of an election or revocation of a settlement must be made

(1) to the Office in the case of

    (a) a veteran or member of the Individual Ready Reserve or Inactive National Guard insured for Veterans' Group Life Insurance in accordance with Article III of the Group Policy, or

    (b) any other member while he is insured for Servicemembers' Group Life Insurance after his separation or release from or termination of duty, and

(2) to the member's uniformed service in all other instances.

If no such election made by the member or veteran or member of the Individual Ready Reserve or Inactive National Guard during his lifetime is in effect at his death, the beneficiary or beneficiaries may elect settlement either in a lump sum or in thirty-six equal monthly installments (except for Family Group Life Insurance on the child of a member). If the election of settlement in one sum is in effect at the insured person's death, the beneficiary or beneficiaries may elect settlement in thirty-six equal monthly installments (except for Family Group Life Insurance on the child of a member). If the election of settlement in thirty-six equal monthly installments is in effect at the insured person's death, the beneficiary or beneficiaries may not elect settlement in one lump sum.

If settlement is made in installments, the first installment shall be payable as of the date of death. Each installment shall be computed so as to include interest on the unpaid balance. The interest rate shall be determined by the Insurance Company. Any installment remaining unpaid at the death of a designated beneficiary under an installment election made by the insured person shall be payable as they fall due to the surviving designated contingent beneficiary, if any. At the death of such a contingent beneficiary, and in all other instances at a beneficiary's death, the value of any unpaid installment payable to such beneficiary, discounted to the date of the beneficiary's death at the same rate used for inclusion of interest in the computation of the installments, will be paid without further accrual of interest in one sum to the beneficiary's estate. If payment in installments has been elected by the beneficiary, upon request of the beneficiary, the value of any unpaid installments will be discounted to the date of payment at the same rate used for inclusion of interest in the computation of the installments and paid to him in lieu of further installments.

Section 5.   PREMIUM--GRACE PERIOD

Premiums under the Group Policy consist of the premium payable for Servicemembers' Group Life Insurance and Family Group Life Insurance in accordance with provision (A) below of this Section, and for Veterans' Group Life Insurance in accordance with provision (B) below of this section.

(A) Servicemembers' Group Life Insurance and Family Group Life Insurance

Premiums for Full-Time Coverage, Part-Time Coverage and Family Group Life Insurance Coverage shall be payable by the Policyholder, and shall be due on the first day of each month. The premium for such insurance payable on any monthly due date shall be determined by a method established by mutual agreement of the Policyholder and the Insurance Company on the basis of the premium rates then in effect for such insurance.

The premium rate for Full-Time Coverage and for Family Group Life Insurance coverage within this provision may be changed at the beginning of any month based on the experience under the Group Policy, such change to be made by the Policyholder with the advance approval of the Insurance Company on a basis consistent with the general practice of life insurance companies under policies of group life insurance issued to large employers.

All premiums falling due under this provision (A) are payable by the Policyholder, on or before their respective due dates, direct to the Insurance Company. The payment of any premium under this provision (A) shall not maintain insurance to which this provision (A) is applicable in force beyond the day immediately preceding the next due date, except as provided in provision (C) of this Section.

In the event of discontinuance of the Group Policy with respect to insurance to which this provision (A) is applicable in accordance with the provisions of Section 9 of Article I, the Policyholder shall be liable to the Insurance Company for the payment of any earned premium accruing for any period the Group Policy continues in force with respect to such insurance on and subsequent to the due date of the last due and unpaid premium for such insurance, and the Insurance Company shall refund to the Policyholder any unearned premium for such insurance for any period subsequent to the effective date of such discontinuance for which premiums were paid by the Policyholder.

(B) Veterans' Group Life Insurance

Premiums for Veterans' Group Life Insurance on the life of a veteran or member of the Individual Ready Reserve or Inactive National Guard are due monthly. The first premium is payable on or before the effective date of such insurance on the person, and subsequent premiums for the person's insurance shall be due monthly commencing one month after the effective date of coverage.

The premium payable on any monthly due date for insurance on a veteran or a member of the Individual Ready Reserve or Inactive National Guard shall be determined from the table of premium rates then in effect for such insurance.

The table of monthly premium rates for Veterans' Group Life Insurance may be changed at the beginning of any month based on the experience under the Group Policy, such change to be made by the Policyholder with the advance approval of the Insurance Company on a basis consistent with the general practice of life insurance companies under policies of group insurance issued to large employers.

(C) Grace Period

(1) Grace Period for Premiums Payable By Policyholder - A grace period of thirty-one days or such longer period as the Insurance Company may allow (with or without interest charges after the first thirty-one days as the Insurance Company may determine) shall be granted to the Policyholder for the payment of any premium due in accordance with provision (A) above for insurance to which said provision is applicable, provided the Policyholder has not previously given written notice to the Insurance Company that the Group Policy is to be discontinued with respect to such insurance as of the due date of such premium, and during any such grace period such insurance shall continue in force.

If the Policyholder fails to pay premium due in accordance with provision (A) above, within the grace period, the Group Policy shall be discontinued with respect to such insurance at the end of the last day of such grace period, but the Policyholder shall, nevertheless, be liable to the Insurance Company for the payment of all premiums then due and unpaid, together with the premiums for the grace period. If, however, written notice is given by the Policyholder to the Insurance Company during the grace period that the Group Policy is to be discontinued with respect to such insurance before the expiration of the grace period, the Group Policy shall

be discontinued with respect to such insurance as of the date of receipt of such written notice by the Insurance Company or the date specified by the Policyholder for such discontinuance, whichever date is later, and the Policyholder shall be liable to the Insurance Company for the payment of all premiums then due in accordance with provision (A) above, which are then unpaid, together with pro-rata premium for the period commencing with the last due date and ending with such date of discontinuance.

If an individual who is required, pursuant to title 38 U.S.C. section 1969(a)(2)(B), to make a direct remittance of costs to the Secretary concerned fails to make the required remittance within 60 days of the date on which such remittance is due, such individual's insurance with respect to which such remittance is required shall be terminated by the Secretary concerned. Such termination shall be made by written notice to the individual's official address and shall be effective 60 days after the date of such notice. Such termination of insurance may be vacated if, before the effective date of termination, the individual remits all amounts past due for such insurance and demonstrates to the satisfaction of the Secretary concerned that the failure to make timely remittance was justifiable.

(2) Grace Period for Premiums Payable By Veterans or Members of the Individual Ready Reserve or Inactive National Guard - A grace period of sixty days will be allowed for the payment of each premium payable by such person in accordance with such provision (B) above after the payment of the first such premium by such person. If any such premium remains due and unpaid at the end of the grace period, any such insurance then in force on such person shall thereupon terminate as provided in the applicable provisions of Article III.

Section 6.   ADDITIONAL COST TRACEABLE TO THE EXTRA HAZARD OF DUTY IN THE UNIFORMED SERVICES

For each month for which any member is insured under the Group Policy, there shall be payable by the Policyholder to the Insurance Company, in addition to the premium payable for such month, an estimated amount determined by the Policyholder to be the cost of such insurance which is traceable to the extra hazard of duty in the uniformed services. Such extra hazard monthly cost shall be determined by the Policyholder on the basis of the excess mortality incurred by members and former members of the uniformed services insured under the Group Policy above what their mortality would have been under peacetime conditions as such mortality is determined by the Policyholder using such methods and data as the Policyholder shall deem to be reasonable and practical.

The amount of estimated extra hazard monthly cost shall be payable on each day that a premium is due under the Group Policy and shall be subject to the same provisions of grace and all other provisions of Section 5 applicable to premiums, except as to amount.

The Policyholder shall adjust annually and retroactively the extra hazard costs paid during the policy year, in accordance with actual experience. If the extra hazard costs paid for that year exceed the adjusted costs, the Insurance Company shall refund the excess to the Policyholder for deposit to the credit of the Revolving Fund established under 38 U.S.C. 1969(d). If the adjusted costs exceed the extra hazard costs paid for that year, the Policyholder shall be liable to the Insurance Company for the payment of the excess at such reasonable time and in such manner as prescribed by the Policyholder.

Section 7.   FINANCIAL DISCLOSURE:  ANNUAL ACCOUNTING AND CONTINGENCY RESERVE

(A) Not later than ninety days after the end of each policy year the Insurance Company shall prepare and furnish to the Policyholder a statement, in form approved by the Policyholder, setting forth the following:

(1) (a) The aggregate amounts of (i) all premiums actually accrued under the Group Policy from the date of issue to the end of such policy year for Servicemembers' Group Life Insurance, Family Group Life Insurance and Veterans' Group Life Insurance under the Group Policy, (ii) all adjusted additional costs traceable to the extra hazard of duty in the uniformed services, payable by the Policyholder to the Insurance Company, which have actually accrued under the Group Policy from the date of issue to the end of such policy year, reduced by

(b) Any premiums returned to the Policyholder in accordance with the provisions of subsection (C) of this Section.

(2) The aggregate amounts of interest for all policy years from the date of issue to the end of such policy year added to the Contingency Reserve held for the Group Policy in accordance with the provisions of subsection (B) of this Section.

(3) The aggregate amounts of all mortality and other claim charges incurred under the Group Policy from the date of issue to the end of such policy year for Servicemembers' Group Life Insurance, Family Group Life Insurance and Veterans' Group Life Insurance.

(4) The aggregate amounts of expense and risk charges incurred under the Group Policy from the date of issue to the end of such policy year for Servicemembers' Group Life Insurance, Family Group Life Insurance and Veterans' Group Life Insurance.

(5) The algebraic sum of items (1) plus (2) minus (3) minus (4).

(B) If item (5) of subsection (A) of this Section is a positive amount, such amount shall be held by the Insurance Company as a Contingency Reserve to be used for charges under the Group Policy only. Such Contingency Reserve shall bear interest at a rate to be determined in advance of each policy year by the Insurance Company, which rate shall be approved by the Policyholder as being consistent with the rates generally used by the Insurance Company for similar funds held under other group life insurance policies. Such rate shall be subject to an increase adjustment, as determined by the Insurance Company at the end of the policy year, to reflect the actual net investment income generated by the financial transactions under the Group Policy. Such interest shall be computed as of the end of each policy year on the mean amount of the Contingency Reserve during that policy year at the rate applicable to that policy year, and the amount of interest so calculated shall be added to the amount of the Contingency Reserve as of the end of such policy year or upon the request of the Policyholder shall be paid to the Policyholder within ninety days after the end of such policy year for deposit to the credit of the Revolving Fund established under 38 U.S.C. 1969 (d).

(C) (1) If and when the Policyholder shall determine that such Contingency Reserve has attained an amount estimated by the Policyholder to make satisfactory provision for adverse fluctuations in future charges under the Group Policy and shall so notify the Insurance Company in writing, then the amount by which the Contingency Reserve computed as of the end of the policy year in which the Insurance Company receives such notice shall exceed the amount of the Contingency Reserve at the beginning of the policy year in which the Insurance Company receives such notice shall be paid to the Policyholder as a return of premium, for deposit to the credit of the Revolving Fund established under 38 U.S.C. 1969(d) (the "Revolving Fund"). Similarly, the amount by which the Contingency Reserve computed as of the end of each subsequent policy year shall exceed the amount of the Contingency Reserve at the beginning of the policy year in which the Insurance Company receives such notice shall also be so paid to the Policyholder. If in any policy year it is anticipated that a payment for such deposit would be made at the end of that policy year in accordance with the provisions of the preceding sentences, partial installments of such payments may be made by the Insurance Company during that policy year in such amounts and at such time as may be mutually agreed upon between the Insurance Company and the Policyholder. Any amounts returned to the Policyholder will be subject to a Market Value Adjustment. The formula to determine the Market Value Adjustment is provided in item (4) of this subsection (C).

(2) If and when the Group Policy shall be discontinued, the Insurance Company will compute the Contingency Reserve as of the date of termination of insurance to which provision (A) of Section 5 of Article I is applicable (this date shall be called the "termination date" for the remainder of this Section). One fourth of the amount computed as of the termination date in accordance with item D (iii) of this Section shall be returned to the Policyholder within thirty days from the termination date. Any amount returned will be deposited to the credit of the Revolving Fund. Any amount returned will be subject to a Market Value Adjustment calculated according to item (4) of this subsection (C). No further amounts will be returned to the Policyholder until after the first anniversary of the termination date, in accordance with the steps described in the remainder of this subsection (C).

The Insurance Company will compute the Contingency Reserve as of the first anniversary of the termination date. This Contingency Reserve calculation will be completed not later than ninety days after this first anniversary. This Contingency Reserve calculation will reflect all charges accrued, including any charges with respect to accrued but undetermined tax liability, as estimated by the Insurance Company, and will include all charges under subsection (D) hereof. This Contingency Reserve calculation will reflect the net investment income generated by the Group Policy in the year following the termination date. For purposes of this calculation of the Contingency Reserve, the item described in item D (iii) of this Section will be set equal to the amount calculated as of the termination date, less the amount returned to the Policyholder after the termination date. The amount calculated as of the termination date, less the amount returned to the Policyholder after the termination date, will be referred to as "final D (iii) amount" in the remainder of this subsection. Any amount of item D (iii) calculated as of the termination date that was returned to the Policyholder since the termination date will be reported as a withdrawal from the

Article I (Continued)

Contingency Reserve. The calculation of the Contingency Reserve as of the first anniversary of the termination date shall include, in item (E) (a) (ii), any expenses incurred by the Insurance Company subsequent to the termination date. If the calculation of the Contingency Reserve results in a positive balance remaining in the Contingency Reserve, such balance shall be paid to the Policyholder as a return of premium, for deposit to the credit of the Revolving Fund. The return of such balance, and the return of the final D (iii) amount shall be subject to the right of the Insurance Company to make such return as described in the following six paragraphs.

The first installment shall be due ninety days after the first anniversary of the termination date. The second through eighth installments will be due every six months thereafter. Thus, the eighth and last installment will be due nine months after the fourth anniversary of the termination date.

The amount of the first installment will be equal to one fourth of the Contingency Reserve calculated as of the first anniversary of the termination date, plus one eighth of the final D (iii) amount, plus or minus a Market Value Adjustment calculated according to item (4) of this subsection (C).

The amount of the second installment will be equal to one fourth of the Contingency Reserve calculated as of the first anniversary of the termination date, plus one eighth of the final D (iii) amount, plus interest earned during the first six months following the first anniversary of the termination date, plus or minus a Market Value Adjustment calculated according to item (4) of this subsection (C).

The amount of the third installment will be equal to one fourth of the Contingency Reserve calculated as of the first anniversary of the termination date, plus one eighth of the final D (iii) amount, plus interest earned during the second six months following the first anniversary of the termination date, plus or minus a Market Value Adjustment calculated according to item (4) of this subsection (C).

The amount of the fourth installment will be equal to one fourth of the Contingency Reserve calculated as of the first anniversary of the termination date, plus one eighth of the final D (iii) amount, plus interest earned during the first six months following the second anniversary of the termination date, plus or minus a Market Value Adjustment calculated according to item (4) of this subsection (C).

The amount of the fifth installment will be equal to one eighth of the final D (iii) amount, plus interest earned during the second six months following the second anniversary of the termination date, plus or minus a market Value Adjustment calculated according to item (4) of this subsection (C).

The amount of the sixth installment will be equal to one eighth of the final D (iii) amount, plus interest earned during the first six months following the third anniversary of the termination date, plus or minus a market Value Adjustment calculated according to item (4) of this subsection (C).

The amount of the seventh installment will be equal to one eighth of the final D (iii) amount, plus interest earned during the second six months following the third anniversary of the termination date, plus or minus a market Value Adjustment calculated according to item (4) of this subsection (C).

The amount of the eighth installment will be equal to one eighth of the final D (iii) amount, plus interest earned during the first six months following the fourth anniversary of the termination date, plus or minus a market Value Adjustment calculated according to item (4) of this subsection (C).

A last payment will be made equal to interest earned that was not included in the eighth installment. This last payment will be made within thirty days of the last installment.

Any return of premium to be made by the Insurance Company under the provisions of this subsection shall be made only if all premiums and extra hazard costs then accrued under the Group Policy have actually been received by the Insurance Company.

(3) Any monies deposited into the Revolving Fund in accordance with the provisions of this subsection (C), plus any interest earned on those monies, shall again be available to pay premiums as provided for in 38 U.S.C.1969(d).

(4) The amount of the Market Value Adjustment (MVA) will be determined using the following formula:

Article I (Continued)

MVA = The product of A, B, C and D, where:

A = -1
B = The amount returned to the Policyholder
C = The duration of the Insurance Company's investment portfolio supporting the liabilities attributable to this Group Policy
D = The market yield less the statutory book yield as of the withdrawal date of the Insurance Company's investment portfolio supporting the liabilities attributable to this Group Policy

The investment portfolio is defined as fixed income assets.
Market yield is defined as expected yield to maturity.

A positive MVA will be added to the amount being returned to the Policyholder.  A negative MVA will be deducted from the amount returned to the Policyholder.

(D) In determining the aggregate amount of mortality and other claim charges for item (3) of subsection (A) of this Section, there shall be included:

    (i) all payments of claims made or approved by the Office in good faith,

    (ii) the amount of pending and unreported claims at the end of the policy year for which the statement is made, as estimated by the Insurance Company,

    (iii) all charges on account of the mortality costs to be expected under Veterans' Group Life Insurance, and

    (iv) all charges on account of the excess mortality costs to be expected under the individual policies issued pursuant to Article IV.

The charge for the mortality costs to be expected under (iii) and (iv) above will be calculated by the Insurance Company, using accepted actuarial principles.

The Insurance Company and the other insurance companies issuing policies pursuant to Article IV will by separate agreement establish a Conversion Pool.  The pool charges and pool credits thereunder shall be established and may be      changed from time to time during continuance of the Group Policy, with the approval of the Policyholder and in accordance with the Conversion Pool agreement.  The Policyholder shall have the right and opportunity at all reasonable times to inspect all records pertaining to the Conversion Pool agreement.

At the end of each year during the continuance for the Group Policy, the Insurance Company shall value, in the aggregate, the expected excess mortality under all individual policies issued pursuant to Article IV which are covered under the Conversion Pool agreement and in force at the end of the policy year, using methods mutually agreeable to the Policyholder, the Insurance Company and the managers of the Conversion Pool.  If the funds of the Conversion Pool are less than the result of such valuation, an additional claim charge equal to the deficiency shall be made under the Group Policy at the end of such policy year. If the funds in the Conversion Pool are more than the result of such valuation, the Contingency Reserve shall be credited at the end of that policy year with that amount by which the funds in the Conversion Pool exceed the result of such valuation.  If the Group Policy terminates, similar valuations shall be made while the Conversion Pool agreement is in effect and as of the following dates: (1) the date of termination, and (2) the date the last of all other charges accrued under the Group Policy is made in accordance with the next to last sentence of subsection (C) of this Section.  Based upon each valuation on and after the termination of the Group Policy, an additional charge or credit shall then be made as provided above.  Upon the subsequent termination of the Conversion Pool, any remaining funds of the Conversion Pool shall be returned to the credit of the Revolving Fund established under 38 U.S.C. 1969 (d).

At the end of each policy year, the Insurance Company may, with approval of the Policyholder, also change the rate of charge to apply to any individual policies issued thereafter pursuant to Article IV on the basis of the Insurance Company's determination of previous and expected experience under policies issued pursuant thereto.

(E) The aggregate amount of expense and risk charges to be included in item (4) of subsection (A) of this Section shall not exceed the maximum amounts specified in the Schedule below. However, such maximum charges for expense charges and risk charges as listed under item (a) (iii) and (b) in the schedule below may be redetermined by the Policyholder for any policy year either by agreement with the Insurance Company or upon written notice given to the Insurance Company at least one year in advance of the beginning of the policy year for which such redetermined maximum charges are to be effective.

Article I (Continued)

## SCHEDULE OF MAXIMUM EXPENSE AND RISK CHARGES

| <u>Item</u> | <u>Maximum Charge</u> |
|---|---|
| (a) Expense Charges | |
| (i) Taxes | The actual accrued amount of taxes directly attributable to the premiums, amount of insurance in force, or reserves under the Group Policy, and the amounts of any Federal Income Tax Liability generated by the Group Policy, as determined by the Insurance Company. |
| (ii) Expense of Operation of the Group Policy | Effective on and after July 1, 1987, the actual accrued amount of such expense, including expense for reinsurance required by Section 16 hereof, as determined by the Insurance Company, if deemed reasonable, customary and consistent with general insurance company practices by the Policyholder. Prior approval of the Policyholder will be obtained in writing for any unusual expenses or initiatives. The Insurance Company will make a good faith effort to minimize expenses in accordance with sound management practices. |
| (iii) Expense charges for Insurance Company and Reinsurers on their proportionate shares | For policy years beginning on July 1 of each of the 1985, 1986, and 1987, .075% of premiums (excluding any portion of Premiums for a policy year in excess of $130,000,000). For each of the policy years beginning on or after July 1, 1988, .0525% of Premiums. |
| (b) Risk charges for Insurance Company and Reinsurers on their proportionate shares | For policy years beginning on July 1 of each of the years 1985, 1986, and 1987, 0.25% of Premiums (excluding any portion of Premiums for a policy year in excess of $130,000,000). For policy years beginning on July 1, of each of the years 1988, 1989, 1990, and 1991, 0.0525% of Premiums. For policy years beginning on July 1, 1992 and later, 0.21% of Premiums. |

"Premiums", as used in the foregoing Schedule, means the aggregate amount of premiums under Section 5 actually accrued under the Group Policy for a policy year. There shall be included as "Taxes", as used in the foregoing Schedule, fees of the insurance departments of the States and of the District of Columbia which are directly attributable to the Group Policy, to the extent approved by the Policyholder.

(F) Whenever the Insurance Company furnishes to the Policyholder a statement required by subsection (A) above, the Insurance Company shall also furnish to the Policyholder a separate accounting which shall allocate each item included in the computation of the Contingency Reserve between Servicemembers' Group Life Insurance, Family Group Life Insurance and Veterans' Group Life Insurance. For the purposes of the Separate Accounting described above, the Contingency Reserve and the Interest added to the Contingency Reserve shall be allocated entirely to the Servicemembers' Group Life Insurance.

(G) The records of the Insurance Company that have any bearing on any document that is furnished to the Policyholder under Article 1, Section 7 of this contract shall be open to inspection by the Policyholder. In addition, copies of any such records shall be furnished by the Insurance Company to the Policyholder on demand by the Policyholder. The Policyholder and the Insurance Company agree that disclosure of these documents is governed by the terms of the Confidentiality and Hold Harmless Agreement entered into between the parties on March 31, 2000. The Insurance Company also agrees to be audited by an independent auditing firm at least biennially.

(H) In addition to the statement of annual accounting required by subsection (A) above, no later than six months after the end of the calendar year, the Insurance Company shall prepare and furnish to the Policyholder financial

Article I (Continued)

reports that pertain to the Group Policy. These reports are: 1) a balance sheet that summarizes the assets that are allocated to the SGLI product through Insurance Company's investment income allocation process, 2) a cash flow statement that summarizes the cash flow allocated to the SGLI product through Insurance Company's investment income allocation process, 3) an exhibit that documents investment expenses that are allocated to the SGLI product through Insurance Company's investment income allocation process, and 4) a rate of return exhibit that shows the calculation of the rate of return on investments allocated to the SGLI product through Insurance Company's investment income allocation process. These reports provide information on how investment income was allocated to the Group Policy, and do not imply any ownership by the Policyholder or allocation of specific assets to the Policyholder. Assets are owned by the Insurance Company and not the Policyholder, or specifically dedicated to the Group Policy.

## Section 8.   RECORDS-INFORMATION TO BE FURNISHED-DETERMINATION BY THE POLICYHOLDER

The Policyholder shall maintain or cause to be maintained records from which may be determined the status of each person with        respect to insurance available under the Group Policy. The Policyholder shall also maintain or cause to be maintained records        from which may be determined the total amount of Servicemembers' Group Life Insurance, Family Group Life Insurance or Veterans' Group Life Insurance under the Group Policy. The Policyholder shall furnish or cause to be furnished to the Office such information concerning persons insured hereunder as may reasonably be considered to have a bearing on the administration of the insurance hereunder. The records of the Policyholder as have a bearing on the insurance hereunder shall be open for inspection by the Office at any reasonable time. The Policyholder and the Insurance Company agree that disclosure of these documents is governed by the terms of the Confidentiality and Hold Harmless Agreement entered into between the parties on March 31, 2000.

To effect the mailing of Veterans' Group Life Insurance applications by the Office to eligible, recently discharged veterans, the Policyholder shall provide or cause to be furnished to the Office, from the Policyholder's system of records 45VA23 Veterans' Assistance Discharge System (VADS) and from the Department of Defense Manpower and Data Center, information sufficient to determine the status of each veteran with respect to eligibility to convert Servicemembers' Group Life Insurance to Veterans' Group Life Insurance after prior written approval from the Policyholder. The Office agrees to retain this information in a separate system for a period of approximately one year and 120 days from the date an eligible veteran is separated from duty. Thereafter, the information will be deleted from the system. The Office also agrees that it will delete information from the system pertaining to an individual veteran upon receipt of his application for Veterans' Group Life Insurance within the one year and 120 day retention period. The Office understands that as a contractor to perform the Policyholder's function of notifying eligible veterans of their entitlement to Veterans' Group Life Insurance, the Office will be considered the Policyholder's employee and as such, its maintenance and use of the information in the separate system is subject to the Privacy Act. 5 U.S.C. 522. and 38 U.S.C. 5701. The Office further understands that the use or release of the information for any other purpose than the mailing of Veterans' Group Life Insurance applications will violate the above statutes and expose it to the penalties for violating the statutes.

For the purposes of the Group Policy, determination by the Policyholder of the following shall be conclusive:

(1) The status of any person as a member, as defined in provision (5) (A), (5)(B) or (5)(C) of Section 1 of this Article I, or as a veteran, as defined in provision (9) of said Section 1 or a member of the Individual Ready Reserve or Inactive National Guard and whether or not a person is insured for Servicemembers' Group Life Insurance or Veterans' Group Life Insurance under the Group Policy at any point of time, or as an insurable dependent as defined in provisions (16)(A) or (16)(B) of Section 1 of this Article I.

(2) The fact and date of a member's separation or release from active duty or active duty for training.

(3) The fact, date, and hours of a member's performance of inactive duty training.

(4) The fact whether a member eligible for Part-Time Coverage suffered disability or death while on active duty, active duty for training, or inactive duty training or while proceeding directly to or returning directly from such duty so as to be insured at death, or for one hundred and twenty days after the date of termination of such duty.

(5) The fact and dates with respect to a member's (i) absence without leave, (ii) confinement by civil authorities under a sentence adjudged by a civil court, or (iii) confinement by military authorities under a court-martial sentence involving total forfeiture of pay and allowances.

(6) The operation of the provisions of Section 10 with respect to any member or veteran.

Section 9.   DISCONTINUANCE OF THE GROUP POLICY

The Group Policy may be discontinued by the Policyholder at any time with respect to insurance to which provision (A) of Section 5 of Article I is applicable, subject to said provision (A) and to provision (C)(1) of said Section 5, provided that written notice of such discontinuation is provided by the Policyholder to the Insurance Company, and provided that such written notice is received by the Insurance Company at least sixty days in advance of the actual discontinuation date.

The Group Policy may, with respect to insurance to which provision (A) of said Section 5 is applicable, be discontinued by the Insurance Company on any monthly premium due date for such insurance specified by the Insurance Company in a written notice of such discontinuance to the Policyholder, provided such premium due date is at least sixty days after receipt by the Policyholder of such written notice.  If the Group Policy is thus discontinued as of a monthly premium due date, then all insurance coverage to which provision (A) of said Section 5 is applicable will be discontinued as of that date, including insurance coverage on any insureds in the 120 day or one year period following separation or release from duty or assignment described in Article II Section 1.

If the Group Policy is discontinued with respect to insurance to which provision (A) of said Section 5 is applicable, the Group Policy shall, as the insurance of each person to which provision (B) of said Section 5 is applicable, be deemed to terminate on the same date as the date of discontinuance of the Group Policy with respect to insurance to which provision (A) of said Section 5 is applicable.

In the event of discontinuance of the Group Policy, the Insurance Company will continue to perform the administration of the Servicemembers' Group Life Insurance, Veterans' Group Life Insurance, and Family Servicemembers' Group Life Insurance programs, until the earlier of a) ten months from the date that the Group Policy ends, and b) a date mutually agreed to by the Insurance Company and the Policyholder. This continuation of the administration is subject to the execution of a service agreement between the Insurance Company and the Policyholder.

In the event of discontinuance of the Group Policy, all records and files in the Insurance Company's possession pertaining to the insurance under the Group Policy and all computer software and equipment and any other equipment purchased by the Insurance Company in connection with the insurance under the Group Policy for which the Insurance Company was reimbursed pursuant to the provisions of Item (a)(ii) of the Schedule of Maximum Expense and Risk Charges of the Group Policy, shall be forwarded to the Policyholder by the Insurance Company in a timely fashion.  The Insurance Company shall prepare, and maintain, a list that identifies such records, files and equipment and furnish said list to the Policyholder on demand.  In the event that the Policyholder requires the Insurance Company's assistance in order to acquire any specialized knowledge necessary to use and maintain such records, files and equipment, the Insurance Company shall render such assistance, as may be mutually agreed between the Insurance Company and the Policyholder.

Consistent with Section 18, Article I, in the event of discontinuance of the Group Policy, no amendment to title 38 United States Code which is enacted or effective on or after the date notification of termination is provided shall have any effect on the rights or liabilities of the Policyholder or the Insurance Company under the Group Policy except pursuant to appropriate amendment to the Group Policy signed by the Policyholder and the Insurance Company.

Section 10. FORFEITURE

Any person guilty of mutiny, treason, spying, or desertion, or who, because of conscientious objections, refuses to perform service in the Armed Forces of the United States or refuses to wear the uniform of such force, shall forfeit all rights to insurance under the Group Policy. No insurance shall be payable under the Group Policy for death inflicted as a lawful punishment for crime or for military or naval offense, except when inflicted by an enemy of the United States.

Section 11. NO ASSIGNMENT

A person's insurance under the Group Policy and any benefits payable in installments shall be non-assignable.

Section 12. CERTIFICATES

Article I (Continued)

Under an arrangement mutually agreeable to the Policyholder and the Insurance Company, a certificate shall be delivered to each person insured under the Group Policy, setting forth the benefits to which such member is entitled under the Group Policy,       to whom such benefits are payable, to whom proof of claim should be submitted, and summarizing the provisions of the Group Policy principally affecting the person's insurance.

## Section 13. PREMIUM REFUNDS

Any premium refund allocable to the Group Policy at each policy anniversary will be determined annually by the Insurance Company and will be credited to the Group Policy as a premium refund on such anniversary.

Any premium refund under the Group Policy will be (1) paid to the Policyholder in cash or, at the option of the Policyholder, (2) applied toward the payment of premiums.

## Section 14. INCONTESTABILITY

(A) The validity of the Group Policy shall not be contested, except for nonpayment of premiums.

(B) Subject to the provisions of Section 10 of this Article I, the validity of insurance under the Group Policy on the life of an insured person shall not be contested except for fraud or non-payment of premiums.

## Section 15. THE CONTRACT

A copy of the Application of the Policyholder is attached to and made a part of the Group Policy.

The Group Policy may be amended at any time, without the consent of the members insured hereunder or of any other person having a beneficial interest therein, upon written request made by the Policyholder and agreed to by the Insurance Company, but any such amendment shall be without prejudice to any claim arising prior to the date of the change. No Agent is authorized to alter or amend the Group Policy, to waive any conditions or restrictions contained herein, to extend the time for paying a premium, or to bind the Insurance Company by making any promise or representation or by giving or receiving any information.       No change in the Group Policy shall be valid unless evidenced by an amendment thereto signed by the Policyholder or his designee and by an Officer of the Insurance Company.

## Section 16. REINSURANCE AND ISSUANCE OF INDIVIDUAL POLICIES OF LIFE INSURANCE

The Insurance Company shall reinsure portions of the total amount of insurance under the Group Policy under conditions determined by the Policyholder in accordance with 38 U.S.C. 1966 (c). The Insurance Company shall also arrange for individual life insurance policies to be issued as described in Article IV by all of the reinsuring companies and by such additional life insurance companies accepted for that purpose under conditions determined by the Policyholder in accordance with 38 U.S.C. 1966. In the event of any dispute as to the eligibility for, or the allocation of, reinsurance or as to the eligibility for issuance of such individual policies, the decision of the Policyholder shall be final and conclusive.

## Section 17. MISSTATEMENT OF AGE

If the age of a member insured for Full-Time Coverage under the Group Policy, an insurable dependent under Family Group Life Insurance under the Group Policy, or a veteran or other person insured for Veterans' Group Life Insurance under the Group Policy is misstated and a higher or lower premium would be required of the person on the basis of his true age, there shall be an equitable adjustment of premiums. If the age of the person has been understated, the person shall be liable to the Office for the difference between the premium or premiums actually paid and that required on the basis of his true age. If the age of the person has been overstated the Office shall refund to the person the difference between the premium or premiums actually paid and that required on the basis of his true age.

## Section 18. COMPLIANCE

If any provisions required by title 38 U.S.C., as constituted on January 1, 2007 are not specifically contained herein, then such provisions shall be deemed part of the Group Policy as though set forth herein at length. No amendment to title 38 United States Code, enacted after said date, shall have any effect on the rights or liabilities of the Policyholder or the Insurance Company under the Group Policy except pursuant to appropriate amendment to the Group Policy signed by the Policyholder and the Insurance Company.

Article I (Continued)

Section 19. AGREEMENT TO CARRY OUT TERMS OF EXECUTIVE ORDER 11246 AS AMENDED

During the performance of this contract, the Insurance Company agrees as follows:

(1) The Insurance Company will not discriminate against any employee or applicant for employment because of race, color, religion, sex or national origin or because of physical or mental handicap. The Insurance Company will take affirmative action to ensure the applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex or national origin or because of physical or mental handicap. Such action shall include, but not be limited to, the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Insurance Company agrees to post in conspicuous places, available to employees and applicants for employment notices to be provided by the Policyholder setting forth the provisions of this non-discrimination clause.

(2) The Insurance Company will, in all solicitations, or advertisements for employees placed by or on behalf of the Insurance Company, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex or national origin or because of physical or mental handicap.

(3) The Insurance Company will send to each labor union or representative of workers with which it has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the Policyholder, advising the labor union or workers' representative of the Insurance Company's commitments under Section 202 of Executive Order No. 11246 of September 24, 1965, as amended, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The Insurance Company will comply with all provisions of Executive Order No. 11246 of September 24, 1965, as amended, and of the rules, regulations, and relevant orders of the Secretary of Labor.

(5) The Insurance Company will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, as amended, and by the rules, regulations and orders of the Secretary of Labor, or pursuant thereto, and will permit access to its books, records, and accounts by the Policyholder and the Secretary of Labor, for purposes of investigation to ascertain compliance with such rules, regulations and orders.

(6) In the event of the Insurance Company's non-compliance with the nondiscrimination clauses of this contract or with any of such rules, regulations or orders, this contract may be canceled, terminated or suspended in whole or in part and the Insurance Company may be declared ineligible for further government contracts in accordance with procedures authorized in Executive Order No. 11246 of September 24, 1965, as amended, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965, as amended, or by rules, regulations, or order of the Secretary of Labor, or as otherwise provided by law.

(7) The Insurance Company will include the provisions of paragraphs (1) through (7) of this Section in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order No. 11246 of September 24, 1965, as amended, so that such provisions will be binding upon each subcontractor or vendor. The Insurance Company will take such action with respect to any subcontract or purchase order as the Policyholder may direct as a means of enforcing such provisions including sanctions for noncompliance: PROVIDED, however, that in the event the Insurance Company becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the Policyholder, the Insurance Company may request the United States to enter into such litigation to protect the interest of the United States.

## ARTICLE II-SERVICEMEMBERS' GROUP LIFE INSURANCE

### Section 1.  FULL-TIME COVERAGE

Full-Time Coverage insures the life of:

(a) a member who serves in a uniformed service on active duty or active duty for training under a call or order to duty that does not specify a period of less than thirty-one days.

(b) a member not within the scope of (a) above who is assigned in the Ready Reserve of a uniformed service to a unit or position in which he may be required to perform active duty, or active duty for training, and each year will be scheduled to perform at least twelve periods of inactive duty training that is creditable for retirement purposes under chapter 1223 of title 10 ( or under chapter 67 of that title as in effect before the effective date of the Reserve Officer Personnel Management Act).

(c) a person who volunteers for assignment to a mobilization category in the Individual Ready Reserve, as defined in section 12304(i)(1) of title 10

As to members within the scope of (a), (b) and (c) above:

Unless the member elects not to be insured for Servicemembers' Group Life Insurance, Full-Time Coverage protects the member against death from the first day which the member is included within the scope of (a) or (b) above, and from the first day on and after April 1, 2001 as of which the member is included within the scope of (c) above, during such duty or assignment to the Ready Reserve, and for one hundred and twenty days after separation or release from such duty or assignment.  If the member is totally disabled on the date of separation or release from such duty or assignment, which disability continues beyond the one hundred and twenty day period, the life insurance protection of the Full-Time Coverage terminates at the end of at the earlier of:

1.  The date the insured ceases to be totally disabled, or

2.  The date that is:

a.  Two years after the date of separation or release from such duty or assignment, in the case of separation or release during the period starting on June 15, 2005 and ending on September 30, 2011; or

b.  Eighteen months after the date of separation or release from such duty or assignment, in the case of separation or release on or after October 1, 2011.

Any written notice of a member of his election not to be insured for Servicemembers' Group Life Insurance under the Group Policy shall be automatically canceled:

(1) if the member enters on duty in another uniformed service,

(2) if the member re-enters on duty in the same uniformed service after separation or release from all duty in that uniformed service, or

(3) in the case of a member on active duty or active duty for training under a call or order to duty that does not specify a period of less than thirty-one days, at the end of the day before the date one hundred and twenty-one days after the member's separation or release from such duty.

If a member insured under Full-Time Coverage furnishes his uniformed service written notice of his election not to be insured for Servicemembers' Group Life Insurance under the Group Policy, his Full-Time Coverage shall automatically terminate at the end of the day before the first day of the month following the month during which the member's uniformed service receives such written notice.

A member who has filed written notice of his election not to be insured for Servicemembers' Group Life Insurance under the Group Policy may cancel such election, but such cancellation shall not become effective unless he complies with the requirements applicable under Section 4 of this Article II, except that if a member elected not to be insured for Servicemembers' Group Life Insurance under the Group Policy solely for the purpose of maintaining Veterans' Group Life Insurance in effect, cancellation of his notice of election not to be insured for Servicemembers'

Article II (Continued)

Group Life Insurance under the Group Policy shall become effective automatically upon termination of his Veterans' Group Life Insurance.

A member within the scope of (a) above who, on the effective date of an automatic coverage change, is (i) absent without leave, (ii) confined by civil authorities under a sentence adjudged by a civilian court, or (iii) confined by military authorities under a court-martial sentence involving total forfeiture of pay and allowances, which absence or confinement has continued for a period of more than thirty-one days, shall not be insured under the Group Policy unless he is restored to active duty with pay or to active duty for training with pay, at which time he shall be insured automatically, and any beneficiary designation or election of settlement in effect at any prior termination of insurance by reason of (i), (ii) or (iii) above shall be automatically revived as of the date the member is restored to duty with pay.

The Full-Time Coverage on a member within the scope of (a) above who is insured therefor shall automatically terminate at the end of the day before the date of the thirty-second day of a continuous period of (i) absence without leave, (ii) confinement by civil authorities under a sentence adjudged by a civilian court, or (iii) confinement by military authorities under a court-martial sentence involving total forfeiture of pay and allowances. Any Full-Time Coverage so terminated as the result of absence without leave or of confinement together with any beneficiary designation or election of settlement in effect for such termination thereof, shall be automatically revived as of the date of member is restored to duty with pay.

In any event, all Full-Time Coverage under the Group Policy on members within the scope of (a), (b) or (c) above shall automatically terminate at the end of the day before the date of discontinuance of the Group Policy with respect to insurance to which provision (A) of Section 5 of Article I is applicable.

Except as may hereafter be provided in the Group Policy, no Full-Time Coverage shall become effective under the Group Policy on any person whose rights to insurance are forfeited pursuant to the provisions of Section 10 of Article I, and any Full-Time Coverage on a member shall automatically terminate at the end of the day before the date of such forfeiture.

## Section 2.  PART-TIME COVERAGE

Part-Time coverage insures the life of a member who is not a member within the scope of (a), (b) or (c) specified in Section 1 of this Article II nor insured for Full-Time Coverage in accordance with the provisions of said Section 1, but who serves in a uniformed service on active duty or active duty for training under a call or order to duty that specifies a period of less than thirty-one days, or on inactive duty training scheduled in advance by competent authority, and while proceeding directly to or returning directly from such duty.

Unless a member elects not to be insured for Servicemembers' Group Life Insurance under the Group Policy, Part-Time Coverage protects the member against death

(1) from the first day of active duty or active duty for training during such duty, and until midnight, local time, on the last day of such duty;

(2) during an inactive duty training period;

(3) while proceeding directly to or returning directly from such active duty, active duty for training, or inactive duty                    training.

Unless a member's Part-Time Coverage is extended by reason of disability, he is insured only on the dates he is on active duty or active duty for training, during the hours of the dates he is on inactive duty training, and during the time on the dates he is proceeding directly to or returning directly from duty qualifying him for Part-Time Coverage. If on the last day of active duty or active duty for training, or at the end of the scheduled period of inactive duty training, or at the end of the time while proceeding directly to or returning directly from such duty the member is suffering from a disability incurred or aggravated during such duty period or travel time which, within one hundred and twenty-days after such date, (i) results in his death, or (ii) renders him uninsurable at standard premium rates according to the good health standards approved by the Policyholder, the insurance shall continue in force to death, or for one hundred and twenty days after such date, whichever is the earlier.

Any member (other than one who has in effect an election not to be insured under the Group Policy) who, when authorized or required by competent authority, assumes an obligation to perform, for less than thirty-one days, active

duty, active duty for training, or inactive duty training, and who is rendered uninsurable at standard premium rates according to the good health standards approved by the Policyholder, or dies within one hundred and twenty days thereafter, from a disability, or aggravation of a pre-existing disability, incurred by him while proceeding directly to or returning directly from such active duty, active duty for training, or inactive duty training, as the case may be, shall be deemed to have been on active duty, active duty for training, or inactive duty training, as the case may be and to have been insured under the Group Policy at the time such disability was incurred or aggravated, and if death occurs within one hundred and twenty days thereafter as a result of such disability, to have been insured at the time of death. In determining whether or not such individual was authorized or required to perform such duty, and whether or not he was rendered so uninsurable or dies within one hundred and twenty days thereafter from a disability so incurred or aggravated, there shall be taken into account the call or order to duty, the orders and authorizations of competent authority, the hour on which the member began to so proceed or to return, the hour on which he was scheduled to arrive for, or on which he ceased to perform such duty, the method of travel employed, his itinerary, the manner in which the travel was performed, and the immediate cause of disability or death. Whenever any claim is filed alleging that the claimant is entitled to benefits by reason of this paragraph, the burden of proof shall be on the claimant.

If a member covered under Part-Time Coverage furnishes his uniformed service during a period of active duty or active duty for training under a call or order to duty that specifies a period of less than thirty-one days, or a period of inactive duty training, written notice of his election not to be insured under the Group Policy, no Part-Time Coverage shall be provided beyond the end of the last day of such active duty or active duty for training, or the end of the period of inactive duty training, including travel time while returning directly from such duty. If such member furnished his uniformed service written notice of his election not to be insured under the Group Policy at a time other than during a period of duty as referred to in the preceding sentence, no Part-Time Coverage shall be provided after receipt of such written notice by his uniformed service.

A member who has filed written notice of his election not to be insured under the Group Policy may cancel such election but such cancellation shall not become effective unless he complies with the requirements applicable under Section 4 of this Article II of the Group Policy.

Any written notice of a member of his election not to be insured under the Group Policy shall be automatically canceled (1) if the member enters on duty in another uniformed service, (2) if the member re-enters on duty in the same uniformed service after separation or release from all duty in that uniformed service, or (3) in the case of a member on active duty or active duty for training under a call or order to duty that does not specify a period less than thirty-one days, at the end of the day before the date one hundred and twenty-one days after the member's separation or release from such duty.

Except as may hereafter be provided in the Group Policy, no Part-Time Coverage shall become effective under the Group Policy on any person whose rights to insurance are forfeited pursuant to the provisions of Section 10 of Article I, and no Part-Time Coverage shall be provided for a member on or after the date of such forfeiture.

In any event, all Part-Time Coverage shall automatically terminate at the end of the day before the date of discontinuance of the Group Policy with respect to insurance to which provision (A) of Section 5 of Article I is applicable.

Section 3.  AMOUNT OF SERVICEMEMBERS' GROUP LIFE INSURANCE

Subject to the provisions of Section 2 of Article I, the amount of Servicemembers' Group Life Insurance under the Group Policy on any member insured hereunder shall be as provided in this section.

The amount of Servicemembers' Group Life Insurance under the Group Policy shall be an amount equal to any multiple of $50,000, as may be designated in writing by the member when identifying himself to the Office as a member eligible for such insurance, up to a maximum amount equal to $400,000. The member may, subsequently, have such amount changed to another multiple of $50,000 by making written request therefor to the Office. Any such change shall not become effective unless the member complies with the requirements applicable under Section 4 of Article II of the Group Policy. In absence of any designation by a member for an amount of insurance as provided for in this paragraph, such member's amount of insurance shall be $400,000.

The amount of Servicemembers' Group Life Insurance under the Group Policy on each member while insured therefor who has filed with his uniformed service written notice of his election to be insured for Servicemembers' Group Life Insurance under the Group Policy for less than any higher amount then applicable, shall, subject to the further provisions hereof, be such lower amount. In the case of a member insured under Full-Time Coverage, any

Article II (Continued)

such election shall be effective from the first day of the month next following the month during which his uniformed service receives said written notice of such election. In the case of a member covered under Part-Time Coverage, any such election shall be effective at the end of the last day of active duty or active duty for training under a call or order to duty that specifies a period of less than thirty-one days, or the end of a period of inactive duty training, including travel time while returning directly from such duty, during which the election was received by his uniformed service. An election by a member covered under Part-Time Coverage received by his uniformed service when he is not performing duty as referred to in the preceding sentence shall be effective immediately upon receipt thereof by his uniformed service. However in any case where a member's uniformed service receives said written notice of such election prior to the date any coverage under the Group Policy becomes effective, then the amount of the member's insurance while insured under the Group Policy shall be such lower amount from the date it becomes effective.

A member who has in effect an election for less than any higher amount that may be applicable of Servicemembers' Group Life Insurance may cancel such election with the result that the amount of such insurance applicable to him after the date of such cancellation will be $400,000. Any such cancellation shall not become effective unless the member complies with the requirements applicable under Section 4 of Article II of the Group Policy.

Any election of a member for less than any higher amount that may be applicable of Servicemembers' Group Life Insurance shall be automatically canceled (1) if such insurance under the Group Policy terminates following separation or release from all duty in uniformed service, (2) if a member enters duty in another uniformed service, (3) if the member re-enters on duty in the same uniformed service after separation or release from all duty in that uniformed service, or (4) in the case of a member insured under Full-Time Coverage when such insurance terminates.

Any member of the uniformed services who died in the performance of duty (as determined by the Secretary concerned) during the period beginning on October 1, 2000 and ending at the close of March 31, 2001, and who on the date of death was insured under Servicemembers Group Life Insurance for $200,000 shall have their coverage increased to $250,000.

Section 4.   SPECIAL REQUIREMENTS FOR SERVICEMEMBERS' GROUP LIFE INSURANCE UNDER CERTAIN CIRCUMSTANCES

This provision shall have application only with respect to members within the scope of (a), (b) and (c) specified in Section 1 of this Article II and to members specified in Section 2 of this Article II.

In order

(a) for a member who has an election not to be insured as provided by Sections 1 and 3 of this Article II, or

(b) for a member who has an election to be insured for less than $400,000
  (i) to cancel such election and substitute therefor the amount $400,000, as provided by Section 3 of this Article II, or
  (ii) to cancel such election and substitute therefor an election for an increased amount of insurance of less than $400,000, as provided by Section 3 of this Article II.

The member must make written request to his uniformed service for the insurance under (a), or the increase under (b) and furnish to his uniformed service evidence of good health satisfactory to the Insurance Company in accordance with standards approved by the Policyholder. The evidence must be furnished as soon as reasonably possible after making the written request. If the evidence is found to be satisfactory, the cancellation of his election not to be insured or the substitute election, as the case may be, shall become effective as of the date the request is received by his uniformed service.

Furthermore, in case of a member whose rights to Servicemembers' Group Life Insurance under the Group Policy were forfeited pursuant to the provisions of Section 10 of Article I but who was restored to duty under conditions which, in effect, result in a remission of sentence, such member may become insured for Servicemembers' Group Life Insurance under the Group Policy only under the same conditions required above in order for a member who has an election not to be insured under the Group Policy to cancel such election.

## ARTICLE III - VETERANS' GROUP LIFE INSURANCE

Veterans' Group Life Insurance insures the life of:

(1) A veteran who is separated or released from a period of active duty or active duty for training or inactive duty training scheduled in advance by competent authority or from assignment to the Ready Reserves or from assignment to a mobilization category in the Individual Ready Reserves as defined in section 12304(i)(1) of title 10, U.S.C. and who makes proper written request for such insurance not more than one year after termination of his Servicemembers' Group Life Insurance under the Group Policy.  If written request, on a form satisfactory to the Office, and payment of the first monthly premium for such insurance are made to the Office within one-hundred and twenty days after separation or release from such duty or thereafter while the veteran is insured for Servicemembers' Group Life Insurance under the Group Policy, the effective date of Veterans' Group Life Insurance for such person shall be the day following the date of termination of his Servicemembers' Group Life Insurance under the Group Policy. If written request on a form satisfactory to the Office, and payment of the first monthly premium for such insurance are made to the Office within the one hundred and twenty days after separation or release from such duty or thereafter while the veteran is insured for Servicemembers' Group Life Insurance under the Group Policy, the effective date of Veterans' Group Life Insurance for such person shall be the day following the date of termination of his Servicemembers' Group Life Insurance under the Group Policy. If written request or payment of the first monthly premium is made within the one year period after termination of Servicemembers' Group Life Insurance under the Group Policy but not within the time limit applicable under the immediately preceding sentence, evidence of good health of the veteran satisfactory to the Insurance Company must be furnished to the Office, without expense to the Insurance Company, in order for the veteran to become insured for Veterans' Group Life Insurance.  If the evidence is determined by the Insurance Company to be satisfactory, the effective date of Veterans' Group Life Insurance for such person is the date such evidence is furnished to the Office.

(2) A person who is a member of the Individual Ready Reserve, except when covered as a member as defined in Section 1(5)(C) in Article I, or of the Inactive National Guard of any uniformed service who makes proper written request for such insurance in a form satisfactory to the Office and pays the first monthly premium no later than one-hundred and twenty days after the later to occur of January 1, 1986 or the date such person is assigned to the Individual Ready Reserve or the Inactive National Guard of any uniformed service.  If written request and payment of the first monthly premium are made within the one year period following January 1, 1986 or the person's date of assignment to the Individual Ready Reserve or the Inactive National Guard, but not within the one-hundred and twenty day period described above, evidence of good health of the member satisfactory to the Insurance Company must be furnished to the Office, without expense to the Insurance Company, in order for the member to become insured for Veterans' Group Life Insurance.  If the evidence is determined by the Insurance Company to be satisfactory, the effective date of the Veterans' Group Life Insurance for the person is the date such evidence is furnished to the Office.

A veteran who was not insured under the Group Policy at the time of separation of release from duty shall in no event become insured for Veterans' Group Life Insurance, unless he qualifies under the provisions of Subsection (2) above.

The amount of Veterans' Group Life Insurance on the life of a veteran who becomes insured therefor shall, subject to the further provisions hereof, be equal to the amount of Servicemembers' Group Life Insurance for which he was insured at the time of separation or release from duty.

The amount of Veterans' Group Life Insurance on the life of a person who is a member of the Individual Ready Reserve, except when covered as a member as defined in Section 1(5)(C) in Article I, or of the Inactive National Guard of any uniformed service who becomes insured therefor on or after September 1, 2005 shall, subject to the further provisions hereof, be equal to $400,000.  However, the member may, in his written request for Veterans' Group Life Insurance, or subsequently, designate any lesser multiple of $10,000 as the amount of Veterans' Group Life Insurance on his life.

In the event a member requests to have the amount of Veterans' Group Life Insurance on his life decreased to any lesser multiple of $10,000, the member may, subsequently, have his amount of Veterans' Group Life Insurance increased to a higher multiple of $10,000, up to the amount of Veterans' Group Life Insurance on his life before the decrease, by making request therefor to the Office within five years after the date of the decrease and furnishing to the Office evidence of his good health satisfactory to the Insurance Company, without expense to the Insurance Company.

Article III (Continued)

Veterans' Group Life Insurance on the life of a veteran or member of the Individual Ready Reserve of a uniformed service or the Inactive National Guard shall terminate at the earliest to occur of the following:

(a) failure of the veteran or member of the Individual Ready Reserve of a uniformed service or the Inactive National Guard to pay any premium due for his Veterans' Group Life Insurance before the expiration of the applicable grace period,

(b) the veteran or member of the Individual Ready Reserve of a uniformed service or the Inactive National Guard again becomes insured for Servicemembers' Group Life Insurance, under Article II, of the Group Policy,

(c) the expiration of the applicable term of the insurance as provided in (i) or (ii) below:

    (i) with respect to a veteran to whom provision (1) above is applicable, his term of insurance shall expire on the fifth anniversary of the date of termination of his Servicemembers' Group Life Insurance under the Group Policy, unless the veteran:

        (a) prior to the expiration of his term of insurance notifies the Office of his intention to continue his Veterans' Group Life Insurance for an additional five year term, in which case a new five year term will commence on that date. The veteran may continue his Veterans' Group Life Insurance for subsequent five-year terms by notifying the Office of his intent to do so prior to the expiration of each term of his insurance.

        (b) becomes a member of the Individual Ready Reserve or the Inactive National Guard of any uniformed service and insured for Veterans' Group Life Insurance pursuant to provision (2) above, in which case a new term of insurance will commence on that date.

    (ii) with respect to a member of the Individual Ready Reserve or the Inactive National Guard of any uniformed service to whom provision (2) above is applicable, his term of insurance shall expire on the first day preceding the fifth anniversary of the commencement of his Veterans' Group Life Insurance under the Group Policy, unless the member, prior to such fifth anniversary and provided that he has continuously remained in the Individual Ready Reserve or the Inactive National Guard during the entire term of his Veterans' Group Life Insurance coverage, notifies the Office of his intention to continue his Veterans' Group Life Insurance for an additional five year term, in which case termination of his Veterans' Group Life Insurance shall be deferred for a further five year period, and

(d) termination of the Group Policy with respect to termination of the insurance for the veteran or member of the Individual Ready Reserve or the Inactive National Guard of a uniformed service, as provided by Section 9 of Article I.

Upon submission of due proof to the Insurance Company that a veteran, whose Veterans' Group Life Insurance terminated by reason of (a) above and who died after such termination but within one year after the date Veterans' Group Life Insurance became effective on his life, was mentally incompetent in accordance with standards acceptable to the Policyholder on the effective date of his Veterans' Group Life Insurance and remained continuously mentally incompetent to the date of his death, the Veterans' Group Life Insurance on the life of such veteran shall be deemed not to have terminated prior to his date of death.

If Veterans' Group Life Insurance on the life of a veteran or member of the Individual Ready Reserve or the Inactive National Guard of a uniformed service terminates in accordance with (a) above, the person's Veterans' Group Life Insurance may be reinstated after termination thereof but prior to the occurrence of (b), (c) and (d) above under the following conditions: (a) evidence of the good health of the person satisfactory to the Insurance Company is furnished to the Office, without expense to the Insurance Company, and (b) payment of (i) the premium for the period commencing on the effective date of the reinstatement and extending to the premium due date occurring one month or more after the effective date of the reinstatement and (ii) the two monthly premiums for the grace period allowed immediately following the due date of the premiums for non-payment of which the person's Veterans' Group Life Insurance terminated. This provision shall be without prejudice to the right of a person whose insurance terminated in accordance with (a) above to again become insured for Veterans' Group Life Insurance in accordance with the provisions of (1) or (2) of this Article III.

### ARTICLE IV-PRIVILEGE OF OBTAINING AN INDIVIDUAL POLICY OF LIFE INSURANCE

Full-Time Servicemembers' Group Life Insurance, which is continued in force following a members release from the uniformed services or from assignment to the Ready Reserves or from assignment to a mobilization category in the Individual Ready Reserves as defined in section 12304(i)(1) of title 10, and Veterans' Group Life Insurance which is in force under premium paying conditions, may be converted to an individual policy of life insurance at anytime without evidence of good health, subject to the conditions and provisions hereinafter set forth.

Insurance on a member's spouse under Family Group Life Insurance which is continued in force for one hundred twenty days following the earlier of:

1) The date of death of the member,
2) The date the member's Servicemembers' Group Life Insurance terminates,
3) The date that the spouse's status as an insurable dependent ends, and
4) The effective date of the member's election to terminate the spouse's insurance.

may be converted to an individual policy of insurance without evidence of good health, subject to the conditions and provisions hereinafter set forth.

The conditions and provisions referred to above are:

(1) Written application for such individual policy and payment of the first premium thereon shall be made prior to termination of Servicemembers' Group Life Insurance, spouse coverage under the Family Group Life Insurance, or Veterans' Group Life Insurance under the Group Policy on the life of the member, spouse or veteran, respectively. Such application must be made to any one of the insurance companies which have then been accepted by the Insurance Company under criteria, terms and conditions established by the Policyholder as eligible to issue individual policies in accordance with the provisions of this Article in the jurisdiction in which such application is being made. The Office, upon request of the member, spouse, or veteran, will furnish a list of insurance companies which have been so accepted.

(2) Such individual policy shall be upon one of the policy forms then customarily issued for conversion purposes by the insurance company selected by the veteran or member, except term insurance or a policy containing disability or other supplementary benefits, under a plan which does not provide for the payment of any sum less than the face value of the individual policy or for the payment of an additional amount of premiums if the insured engages in the military service of the United States.

(3) The premium for such individual policy shall be the premium, as determined by the insurance company issuing such policy, applicable to the class of risk (other than health conditions and military service) to which the member, spouse, or veteran belongs and to the form and amount of the individual policy at the member's, spouse's, or veterans' attained age at the date of issue of such individual policy.

(4) The amount of such individual policy shall not exceed the amount of the Servicemembers' Group Life Insurance, spouse coverage under Family Group Life Insurance, or Veterans' Group Life Insurance under the Group Policy on the life of the veteran or member on the date written application for such individual policy is made.

(5) The individual policy will be effective on the day following termination of Servicemembers' Group Life Insurance, spouse coverage under Family Group Life Insurance, or Veterans' Group Life Insurance under the Group Policy on the life of the member, spouse, or veteran.

In the event Veterans' Group Life Insurance on the life of a veteran or member terminates because the veteran or member again becomes insured for Servicemembers' Group Life Insurance under the Group Policy, the veteran or member shall be entitled to have issued to him, without evidence of good health, an individual policy of life insurance only, without disability or other supplementary benefits, under the same terms and conditions as would be applicable if such insurance had terminated, except that (i) the written application and the payment of the first premium therefor must be made prior to the expiration of the sixty day period commencing on the date the veteran or member again becomes insured for Servicemembers' Group Life Insurance under the Group Policy and (ii) the individual policy will be effective on the date the written application and the first premium payment are made to the insurance company selected by the veteran or member, or, if later, the day following termination of the Veterans' Group Life Insurance on the life of the veteran or member.

**Article VI (continued)**

If a veteran or member, whose Veterans' Group Life Insurance terminates because he again becomes insured for Servicemembers' Group Life Insurance, dies within the sixty day period commencing on the date the veteran or member again becomes insured for Servicemembers' Group Life Insurance and if the Servicemembers' Group Life Insurance for which he is insured at death is less than the full amount currently available under the program, any Veterans' Group Life Insurance in excess of Servicemembers' Group Life Insurance on the life of the veteran or member at his death, but not more than the amount of his Veterans' Group Life Insurance which was not converted to an individual policy prior to death, will be payable under the Group Policy.

## ARTICLE V – OPTION TO ACCELERATE PAYMENT OF DEATH BENEFITS

**Section 1.  DEFINITIONS**

(A)  Terminally Ill Servicemember, spouse, or Veteran:

A person insured under the Group Policy for Servicemembers' Group Life Insurance, a veteran insured under Veterans' Group Life Insurance, or a spouse insured under Family Group Life Insurance, whose life expectancy is 9 months or less.

(B)  Terminal Illness Proceeds:

The Servicemember or Veteran may elect to receive up to 50% of the amount in force on the insured's life on the date the Office receives proof that the insured is a Terminally Ill Servicemember or Veteran, but not more than $200,000. The Terminal Illness Proceeds must be a multiple of $5,000.

The member may elect to receive up to 50% of the amount in force on the spouse's life on the date the Office receives proof that the spouse is a Terminally Ill spouse, but not more that $50,000. The Terminal Illness Proceeds must be a multiple of $5,000.

**Section 2.  OPTION**

(A)  A Terminally Ill Servicemember or Terminally Ill Veteran may elect to have the Terminal Illness Proceeds placed under this Option. That election is subject to the conditions set forth below.

(B)  A member whose spouse is a Terminally Ill spouse may elect to receive the Terminal Illness Proceeds placed under this Option. That election is subject to the conditions set forth below.

**Section 3.  PAYMENT OF TERMINAL ILLNESS PROCEEDS**

The Office will pay the Terminal Illness Proceeds placed under this option in one sum when it receives proof that the insured is a Terminally Ill Servicemember, spouse or Veteran.

**Section 4.  TO WHOM PAYABLE**

The benefits under this provision are payable to the Servicemember or Veteran.

**Section 5.  CONDITIONS**

A Servicemember's or Veteran's right to be paid under this option is subject to the following terms:

(A)  The insured must have a life expectancy of nine months or less, and

(B)  For Terminally Ill Servicemembers and Terminally Ill Veterans: The insured must send a completed application form for accelerated death benefits to the Office. The insured is required to complete a portion of the application and the insured's physician is required to complete a portion of the application. For Terminally Ill Spouses, the member must send a completed application form for accelerated death benefits to the Office. The member is required to complete a portion of the application and the spouse's physician is required to complete a portion of the application, and

(C)  The insured must be approved for this benefit option by the Office.

**Section 6.  DISCOUNTING**

The Terminal Illness Proceeds will be discounted using an interest rate determined by the Insurance Company.

Section 7.  EFFECT ON INSURANCE

The benefit that would have been paid on the insured's death as defined in Article II, Article III or Article VI of the Group Policy will be reduced by the Terminal Illness Proceeds. Also, the amount eligible for conversion to an individual policy under Article IV of the Group Policy will be reduced by the Terminal Illness Proceeds.

A Servicemember or Veteran may only apply once for this benefit on his life even if less than the maximum benefit amount is elected.

A Servicemember may only apply once for this benefit on the life of his spouse even if less than the maximum benefit is elected.

## ARTICLE VI - FAMILY GROUP LIFE INSURANCE

Section 1.  PERSONS COVERED

Family Group Life Insurance Coverage insures the life of:

(A)  the member's spouse; and

(B)  the member's child as defined in 16(B) of Section 1 of Article I.

Section 2.  EFFECTIVE DATE OF COVERAGE

Unless the member elects not to insure his spouse under Family Group Life Insurance, the insurance on the member's spouse is effective on the later of:

(A)  November 1, 2001;
(B)  The date the member is enrolled in Servicemembers' Group Life Insurance;
(C)  The date the member enrolls the spouse, subject to the terms in Section 5 of Article VI; and
(D)  The date of marriage.

Insurance on the member's child is effective on the later of:

(A)  November 1, 2001;
(B)  The date the member is enrolled in Servicemembers' Group Life Insurance;
(C)  The child's date of birth; and
(D)  If the child is not the natural child of the member, the date on which the child acquired status as an insurable dependent of the member.

Section 3.  TERMINATION OF BENEFITS

(A)  Family Group Life Insurance will terminate on the earliest of:

(1)  120 days after the death of the member;
(2)  120 days after the date the member's Servicemembers' Group Life Insurance terminates;
(3)  120 days after the termination of the dependent's status as an insurable dependent of the member; and
(4)  120 days after the effective date of the member's election to terminate the spouse coverage.

(A)  The Family Group Life Insurance coverage on a member's spouse who is insured therefore shall automatically terminate at the end of the day one hundred twenty days after the date of the thirty-first day of a continuous period of (i) absent without leave, (ii) confinement by civil authorities under a sentence adjudged by a civilian court, or (iii) confinement by military authorities under a court-martial sentence involving total forfeiture of pay and allowances. Any Family Group Life Insurance coverage so terminated as a result of (i) absent without leave, (ii) confinement by civil authorities under a sentence adjudged by a civilian court, or (iii) confinement by military authorities under a court-martial sentence involving total forfeiture of pay and allowances together with any election of settlement in effect for such termination thereof, shall be automatically revived as of the date the member is restored to duty with pay.

(B)  In any event, all Family Group Life Insurance Coverage under the Group Policy shall automatically terminate at the end of the day before the date of discontinuance of the Group Policy with respect to insurance to which provision (A) of Section 5 of Article I is applicable.

(C)  Except as may hereafter be provided in the Group Policy, no Family Group Life Insurance coverage shall become effective under the Group Policy for any member whose rights to insurance are forfeited pursuant to the provisions of Section 10 of Article I, and any Family Group Life Insurance coverage that is in effect on the date the member's coverage is so forfeited shall terminate at the end of the 120th day following forfeiture of the member's coverage.

Section 4.  AMOUNT OF FAMILY GROUP LIFE INSURANCE

(A)  The amount of Family Group Life Insurance under the Group Policy, except as provided elsewhere in this section, shall be:

Article VI (continued)

    (1)  For a spouse, $100,000; or
    (2)  For a child, $10,000

(A) An insurable dependent may not be insured at any time by the insurance coverage under the Group Policy by more than one member. If an insurable dependent who is a spouse is otherwise eligible to be insured by the coverage of more than one member under the Group Policy, the spouse shall be insured by the member to whom the spouse is currently married. If an insurable dependent who is a child is otherwise eligible to be insured by the coverage of more than one member under the Group Policy, the child shall be insured by the coverage of the member whose eligibility for insurance under the Group Policy occurred first, except that if that member does not have legal custody of the child, the child shall be insured by the coverage of the member who has legal custody of the child.

(B) The amount of insurance on the spouse of a member who has filed with his uniformed service written notice of election for the spouse to be insured for less than $100,000, shall, subject to the further provisions hereof, be such lower amount. In the case of a member's insured spouse, any such election shall be effective from the first day of the month next following the month during which his uniformed service receives said written notice of such election. However in any case where a member's uniformed service receives said written notice of such election prior to the date any coverage under the Group Policy becomes effective, then the amount of the member's insurance while insured under the Group Policy shall be such lower amount from the date it becomes effective. Family Group Life Insurance Coverage on the spouse less than $100,000 must be in increments of $10,000.

(C) A member who has filed written notice of his election not to insure his spouse for Family Group Life Insurance may cancel such election, but such cancellation shall not become effective unless he complies with the requirements applicable under Section 5 of this Article VI.

(D) A member who has in effect an election to insure his spouse for less than $100,000 may cancel such election with the result that the amount of such insurance applicable to his spouse after the date of such cancellation will be $100,000. Any such cancellation shall not become effective unless the member complies with the requirements applicable under Section 5 of Article VI of the Group Policy.

Any election of a member for less than $100,000 shall be automatically canceled as follows:

    (1)  If the spouse's insurance under the Group Policy terminates following the member's separation or release from duty in uniformed service;
    (2)  if a member enters duty in another uniformed service;
    (3)  if the member re-enters on duty in the same uniformed service after separation or release from all duty in that uniformed service; or
    (4)  in the case of a member insured under Full-Time Coverage under Article II of the Group Policy, when such insurance terminates.

Section 5.   SPECIAL REQUIREMENTS FOR FAMILY GROUP LIFE INSURANCE UNDER CERTAIN CIRCUMSTANCES

This provision shall have application only with respect to members who elect

    (A)  not to have spouse coverage; or
    (B)  to have spouse coverage for less than $100,000.

In order for a member who has an election for no spouse coverage or for spouse coverage to be less than $100,000 to cancel such election and substitute therefor the amount $100,000, as provided by Section 4 of this Article VI, or to cancel such election and substitute therefor an election for an increased amount of insurance of less than $100,000, as provided by Section 4 of this Article VI, the member must make written request to his uniformed service for the increased amount and furnish to his uniformed service evidence of the spouse's good health satisfactory to the Insurance Company in accordance with standards approved by the Policyholder. The evidence must be furnished as soon as reasonably possible after making the written request. If the evidence is found to be satisfactory, the cancellation of his election not to insure his spouse or to insure his spouse for less than $100,000, as the case may be, shall become effective as of the date the request is approved.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called The Insurance Company)

AMENDMENT TO GROUP POLICY G-32000
(to be attached to and made a part of the Group Policy)

The Group Policy is modified as follows:

1.  Effective July 1, 2001, the third paragraph of Section 5(B) of Article I is replaced by the
    following:

    The table of monthly premium rates for Veterans' Group Life Insurance may be changed at
    the beginning of any month based on the experience under the Group Policy, such change to
    be made by the Policyholder with the advance approval of the Insurance Company on a basis
    consistent with the general practice of life insurance companies under policies of group
    insurance issued to large employers.

It is agreed that such changes shall form a part of the Group Policy, but not unless both the
Policyholder and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date ...7/5/2002...   By ...................................

DEPARTMENT OF VETERANS AFFAIRS

Date ...6/22/2005...   By ...................................
                          Director, VA Insurance Services

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called The Insurance Company)

AMENDMENT TO GROUP POLICY G-32000
(to be attached to and made a part of the Group Policy)

The Group Policy is modified as follows:

1.  Effective September 10, 2007, Section 1(12) of Article I is replaced by the following:

    The term "Office" means the Office of Servicemembers' Group Life Insurance which is the administrative office established by the Insurance Company for the Group Policy. The address of the Office is 80 Livingston Avenue, Roseland NJ 07068-1733. The Insurance Company may change the address of the Office upon three months notice in writing to, and approval by, the Policyholder

It is agreed that such changes shall form a part of the Group Policy, but not unless both the Policyholder and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date  November 14 2007          By  _____

DEPARTMENT OF VETERANS AFFAIRS

Date  11/9/07          By  _____
Director, VA Insurance Services

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called The Insurance Company)

AMENDMENT TO GROUP POLICY G-32000
(to be attached to and made a part of the Group Policy)

The Group Policy is modified as follows:

1.  Effective January 1, 2007, the second paragraph of Section 8 of Article I is replaced by the
    following:

    To effect the mailing of Veterans' Group Life Insurance applications by the Office to
    eligible, recently discharged veterans, the Policyholder shall provide or cause to be
    furnished to the Office information sufficient to determine the status of each veteran with
    respect to eligibility to convert Servicemembers' Group Life Insurance to Veterans' Group
    Life Insurance.  The Office agrees to retain this information for a period of approximately
    three years and 120 days from the date an eligible veteran is separated from duty.
    Thereafter, the information will be deleted.  The Office understands that as a contractor to
    perform the Policyholder's function of notifying eligible veterans of their entitlement to
    Veterans' Group Life Insurance, its maintenance and use of the information is subject to
    the Privacy Act. 5 U.S.C. 552 and 38 U.S.C. 5701. The Office further understands that
    the use or release of the information for any other purpose than the mailing of Veterans'
    Group Life Insurance applications will violate the above statutes and expose it to the
    penalties for violating the statutes.

It is agreed that such changes shall form a part of the Group Policy, but not unless both the
Policyholder and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date March 7, 2008          By _____

DEPARTMENT OF VETERANS AFFAIRS

Date MARCH 3, 2008          By _____
                                 Director, VA Insurance Services

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called The Insurance Company)

AMENDMENT TO GROUP POLICY G-32000
(to be attached to and made a part of the Group Policy)

The Group Policy is modified as follows:

1.  Effective November 1, 2006, the last sentence of the second paragraph in Section 9 of Article
    I is replaced by the following:

    If the Group Policy is thus discontinued as of a monthly premium due date, then all insurance
    coverage to which provision (A) of said Section 5 is applicable will be discontinued as of that
    date, including insurance coverage on any insureds in the 120 day or two year period
    following separation or release from duty or assignment described in Section 1 of Article II.

It is agreed that such changes shall form a part of the Group Policy, but not unless both the
Policyholder and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date August 11 2008               By _____

                                  DEPARTMENT OF VETERANS AFFAIRS
                                  THOMAS M. LASTOWKA
Date  8/4/2008                    By _____
                                      Director, VA Insurance Services

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called The Insurance Company)

AMENDMENT TO GROUP POLICY G-32000
(to be attached to and made a part of the Group Policy)

The Group Policy is modified, effective October 10, 2008, as follows:

1. Subsection 16 of Section 1 of Article I is amended by:
   a. Replacing the "." at the end of Article I(16)(B)(iv) with "; and", and
   b. Add "(C) the member's stillborn child."

2. Section 8(1) is replaced with:
   The status of any person as a member, as defined in provision (5) (A), (5)(B) or (5)(C) of Section 1 of this Article I, or as a veteran, as defined in provision (9) of said Section 1 or a member of the Individual Ready Reserve or Inactive National Guard and whether or not a person is insured for Servicemembers' Group Life Insurance or Veterans' Group Life Insurance under the Group Policy at any point of time, or as an insurable dependent as defined in provisions (16)(A), (16)(B) or (16)(C) of Section 1 of this Article I.

3. Section 1 of Article VI is amended by:
   a. Replacing the "." at the end of Article VI(1)(B) with "; and", and
   b. Add "(C) the member's stillborn child."

4. Subsection (A)(2) of Section 3 of Article VI is amended by removing "120 days after".

It is agreed that such changes shall form a part of the Group Policy, but not unless both the Policyholder and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date  5\5\2009          By

DEPARTMENT OF VETERANS AFFAIRS

Date  5/5/2009          By
Director, VA Insurance Services

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called The Insurance Company)

AMENDMENT TO GROUP POLICY G-32000
(to be attached to and made a part of the Group Policy)

The Group Policy is modified as follows:

1. Effective September 1, 2009, insert the following, as a new paragraph, after the third paragraph in Section 4 of Article I:

   The Insurance Company may fully discharge its payment obligations under the Group Policy with respect to lump sum payments by paying the full amount of insurance proceeds in a single distribution to an account held on deposit with the Insurance Company, either in the beneficiary's name or in trust for the beneficiary.

It is agreed that such changes shall form a part of the Group Policy, but not unless both the Policyholder and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date  9/24/09          By

DEPARTMENT OF VETERANS AFFAIRS

Date  9/24/2009          By
                                    Director, VA Insurance Services

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called The Insurance Company)

AMENDMENT TO GROUP POLICY G-32000
(to be attached to and made a part of the Group Policy)

The Group Policy is modified as follows:

1.  Effective January 1, 2009, amend subsection (D) of Section 7 of Article I as follows:

    A.  Remove the word "and" at the end of subsection (D) (iii),

    B.  Change the existing subsection (D) (iv) to (D) (v),

    C.  Add a new subsection (D) (iv) as follows:
        "(iv) all charges on account of mortality costs to be expected for: 1) the 120 day or
        two year period following separation or release from duty or assignment and 2) 120
        day periods described in Section 3 of Article VI, and" and,

    D.  The sentence immediately following subsection (D)(v) is replaced with:
        "The charge for the mortality costs to be expected under (iii), (iv) and (v) above will
        be calculated by the Insurance Company, using accepted actuarial principles."

It is agreed that such changes shall form a part of the Group Policy, but not unless both the
Policyholder and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date  5|5|09          By  Frances K Hackett

DEPARTMENT OF VETERANS AFFAIRS

Date  5/5/2009        By  _____
                              Director, VA Insurance Services

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA**
(hereinafter called The Insurance Company)

**AMENDMENT TO GROUP POLICY G-32000**
(to be attached to and made a part of the Group Policy)

The capitalized terms used but not defined in this Amendment shall have the meaning ascribed to such terms in the Group Policy. The Group Policy is modified as follows:

1. Effective January 1, 2007, add the following sentence at the end of the third paragraph in Article III.

   However, the member may, in his written request for Veteran's Group Life Insurance, or subsequently, designate any lesser multiple of $10,000 as the amount of Veterans' Group Life Insurance on his life.

2. Effective January 1, 2007, replace the second paragraph of Article IV with the following:

   Insurance on a member's spouse under Family Group Life Insurance which is terminated in accordance with Section 3 of Article VI may be converted to an individual policy of insurance without evidence of good health, subject to the conditions and provisions hereinafter set forth.

3. Effective January 1, 2007, the header on the second page of Article IV is changed from "Article VI (continued)" to "Article IV (continued)".

4. Effective January 1, 2007, the subsection lettering under Section 3 of Article VI are (A), (B), (C) and (D) instead of (A), (A), (B) and (C).

5. Effective January 1, 2007, the subsection lettering under Section 4 of Article VI are (A), (B), (C), (D) and (E) instead of (A), (A), (B), (C) and (D).

6. Effective June 15, 2005, replace subsection 2 of the second paragraph of Section 1 of Article II with:

   2. The date that is two years after the date of separation or release from such duty or assignment.

7. Effective October 13, 2010, subsection (A)(2) of Section 3 of Article VI is replaced with:

   (2) (i)  for a member defined in subsections (5)(B) and (5)(C) of Section 1 of Article I, 120 days after the member's separation or release from such assignment,

   (ii)  for all other members, 120 days after the member's separation or release from the uniformed services.

8. Effective April 11, 2011, insert the following as a new paragraph after the fifth paragraph of Article III:

   A veteran may elect to increase his coverage by $25,000 once in each five year period, where each five year period commences on the quinquennial anniversary of the effective date of his Veterans' Group Life Insurance under the Group Policy. Such election must be made to the Office prior to the effective date of the increase in coverage. A veteran is

eligible to make the above mentioned election if the veteran will be under the age of 60 on the effective date of the increase in coverage and the veteran's total amount of coverage, after the increase in coverage, does not exceed the maximum amount of coverage as defined in the second paragraph of Section 2 of Article I. If the maximum amount of coverage as defined in the second paragraph of Section 2 of Article I exceeds the veteran's amount of coverage at the time of the election by less than $25,000, then the veteran's coverage will be increased to the maximum amount of coverage as defined in the second paragraph of Section 2 of Article I.  The increase in coverage will be effective on the later of:

    (1)  April 11, 2011, and

    (2)  the next quinquennial anniversary of the effective date of his Veterans' Group Life Insurance under the Group Policy, that occurs after the date the veteran makes the election to increase his coverage.

9.  Effective October 13, 2010, the following changes will be made to Article V:

    A.  Remove Section 6 in its entirety; and
    B.  Change "Section 7" to "Section 6".

It is agreed that such changes shall form a part of the Group Policy, but not unless both the Policyholder (as defined in the Group Policy) and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date ....3/21/2011........    By ...................................

DEPARTMENT OF VETERANS AFFAIRS

Date ..........3/15/2011........    By ...................................

Director, VA Insurance Services

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called The Insurance Company)

AMENDMENT TO GROUP POLICY G-32000
(to be attached to and made a part of the Group Policy)

The capitalized terms used but not defined in this Amendment shall have the meaning ascribed to such terms in the Group Policy. The Group Policy is modified as follows:

1.  Effective January 1, 2007, replace Article III(c) with the following:

    (c)  the expiration of the applicable term of the insurance as provided in (i) or (ii) below:

        (i)  with respect to a veteran to whom provision (1) above is applicable, his term of insurance shall expire on the fifth anniversary of the effective date of his Veterans' Group Life Insurance under the Group Policy, unless the veteran:

            (a) prior to the expiration of his term of insurance pays the due premium for the period commencing on the fifth anniversary of the effective date of his Veterans' Group Life Insurance before the expiration of the applicable grace period, in which case a new five year term will commence on that date.  The veteran may continue his Veterans' Group Life Insurance for subsequent five-year terms by paying the due premium for the period, prior to the expiration of the applicable grace period, commencing after the expiration of the last five year term.

            (b) becomes a member of the Individual Ready Reserve or the Inactive National Guard of any uniformed service and insured for Veterans' Group Life Insurance pursuant to provision (2) above, in which case a new term of insurance will commence on that date.

        (ii)  with respect to a member of the Individual Ready Reserve or the Inactive National Guard of any uniformed service to whom provision (2) above is applicable, his term of insurance shall expire on the first day preceding the fifth anniversary of the commencement of his Veterans' Group Life Insurance under the Group Policy, unless the member, prior to such fifth anniversary and provided that he has continuously remained in the Individual Ready Reserve or the Inactive National Guard during the entire term of his Veterans' Group Life Insurance coverage, pays the due premium, prior to the expiration of the applicable grace period, for the period commencing after the expiration of the just completed five year term, in which case termination of his Veterans' Group Life Insurance shall be deferred for a further five year period, and;

2.  Effective January 1, 2007, delete the third sentence in Article III(1), so the paragraph will read as follows:

        A veteran who is separated or released from a period of active duty or active duty for training or inactive duty training scheduled in advance by competent authority or from assignment to the Ready Reserves or from assignment to a mobilization category in the Individual Ready Reserves as defined in section 12304(i)(1) of title 10, U.S.C. and who makes proper written request for such insurance not more than one year after termination of his Servicemembers' Group Life Insurance under the Group Policy.  If written request, on a form satisfactory to the Office, and payment of the first monthly premium for such insurance are made to the Office within one-hundred and twenty days after separation or release from such duty or thereafter while the veteran is insured for Servicemembers' Group Life Insurance under the Group Policy, the effective date of Veterans' Group Life Insurance for such person shall be the day following the date of termination of his Servicemembers' Group Life Insurance under the

Group Policy. If written request or payment of the first monthly premium is made within the one year period after termination of Servicemembers' Group Life Insurance under the Group Policy but not within the time limit applicable under the immediately preceding sentence, evidence of good health of the veteran satisfactory to the Insurance Company must be furnished to the Office, without expense to the Insurance Company, in order for the veteran to become insured for Veterans' Group Life Insurance.  If the evidence is determined by the Insurance Company to be satisfactory, the effective date of Veterans' Group Life Insurance for such person is the date such evidence is furnished to the Office.

It is agreed that such changes shall form a part of the Group Policy, but not unless both the Policyholder and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date April 25 2011          By _____

DEPARTMENT OF VETERANS AFFAIRS

Date 4/18/2011          By _____
                                            Director, VA Insurance Services

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called The Insurance Company)

AMENDMENT TO GROUP POLICY G-32000
(to be attached to and made a part of the Group Policy)

The capitalized terms used but not defined in this Amendment shall have the meaning ascribed to such terms in the Group Policy. The Group Policy is modified as follows:

1.  Effective October 7, 2013, Section 1 of Article I is replaced with the following:

    Section 1.        DEFINITION OF CERTAIN TERMS USED IN THE GROUP POLICY

    (1) The term "active duty" means-

        (A) full-time duty in the Armed Forces, other than active duty for training;

        (B) full-time duty (other than for training purposes) as a commissioned officer of the Regular or Reserve Corps of the Public Health Service;

        (C) full-time duty as a commissioned officer of the National Oceanic and Atmospheric Administration; and

        (D) full-time duty as a cadet or midshipman at the United States Military Academy, United States Naval Academy, United States Air Force Academy, or the United States Coast Guard Academy.

    (2) The term "active duty for training" means --

        (A) full-time duty in the Armed Forces performed by Reserves for training purposes;

        (B) full-time duty for training purposes performed as a commissioned officer of the Reserve Corps of the Public Health Service;

        (C) full-time duty member, cadet, or midshipman of the Reserve Officers Training Corps while attending field training or practice cruises; and

        (D) in the case of members of the Army National Guard or Air National Guard of any State, full-time duty under sections 316, 502, 503, 504, or 505 of title 32, United States Code.

    (3) The term "inactive duty training" means --

        (A) duty (other than full-time duty) prescribed or authorized for Reserves (including commissioned officers of the Reserve Corps of the Public Health Service) which duty is scheduled in advance by competent authority to begin at a specific time and place; and

        (B) in the case of a member of the Army National Guard or Air National Guard of any State, such term means duty (other than full-time duty) which is scheduled in advance by competent authority to begin at a specific time and place under sections 316, 502, 503, 504, or 505 of title 32, United States Code.

    (4) The terms "active duty for training" and "inactive duty training" do not include duty performed as a temporary member of the Coast Guard Reserve, and the term "inactive duty training"

1

does not include (i) work or study performed in connection with correspondence courses, or (ii) attendance at an educational institution in an inactive status.

(5) The term "member" means —

    (A) a person on active duty, active duty for training, or inactive duty training in the uniformed services in a commissioned, warrant, or enlisted rank or grade, or as a cadet or midshipman at the United States Military Academy, United States Naval Academy, United States Air Force Academy, or the united States Coast Guard Academy;

    (B) a person who volunteers for assignment to the Ready Reserve of a uniformed service and is assigned to a unit or position in which he may be required to perform active duty, or active duty for training, and each year will be scheduled to perform at least twelve periods of inactive duty training that is credible for retirement purposes under chapter 1223 of title 10 (or under chapter 67 of that title as in effect before the effective date of the Reserve Officer Personnel Management Act);

    (C) a person who volunteers for assignment to a mobilization category in the Individual Ready Reserve, as defined in section 12304(i)(1) of title 10; and

    (D) a member, cadet or midshipman of the Reserve Officers Training Corps while attending field training or practice cruises.

(6) The term "uniformed services" means Army, Navy, Air Force, Marine Corps, Coast Guard, the commissioned corps of the Public Health Service, and the commissioned corps of the National Oceanic and Atmospheric Administration.

(7) The term "Armed Forces" means Army, Navy, Air Force, Marine Corps, Coast Guard and the Reserves thereof.

(8) The term "Reserves" means the Army Reserve, the Army National Guard, the Naval Reserve, the Marine Corps Reserve, the Air Force Reserve, the Air National Guard, the Coast Guard Reserve (other than a temporary member of the Coast Guard Reserve), the Reserve Corps of the Public Health Service, and the Reserve Officers Training Corps.  References in the Group Policy to "Reserves" shall mean any of the foregoing.

(9) The term "veteran" means a former member who has been separated or released from duty with a uniformed service, including a former member who has been separated or released from assignment to the Ready Reserve of a uniformed service or released from assignment to a mobilization category in the Individual Ready Reserves as defined in section 12304(i)(1) of title 10.

(10) The term "Servicemembers' Group Life Insurance" means the life insurance protection provided under Article II of the Group Policy and includes all life insurance protection under Article II of the Group Policy as constituted prior to January 1, 2007.

(11) The term "Veterans' Group Life Insurance" means the life insurance protection provided under Article III of the Group Policy and includes all life insurance protection under Article III of the Group Policy as constituted prior to January 1, 2007.

(12) The term "Office" means the Office of Servicemembers' Group Life Insurance which is the administrative office established by the Insurance Company for the Group Policy.  The address of the Office is 80 Livingston Avenue, Roseland NJ 07068-1733.  The Insurance Company may change the address of the Office upon three months notice in writing to, and approval by, the Policyholder.

(13) Wherever in the Group Policy a date is used or appears, it shall mean, with respect to an individual member or veteran, that date determined at the location of the member or veteran, except that the effective date and time for any change in benefits under the Servicemembers' Group Life Insurance Program shall be based on the date and time according to the time zone immediately west of the International Date Line.

(14) Whenever in the Group Policy a personal pronoun in the masculine gender is used or appears, it shall be taken to include the feminine also, unless the context clearly indicates the contrary.

(15) The term "policy year" as used in the Group Policy means the period beginning with the date of issue of the Group Policy, or with a subsequent policy anniversary, and ending with the date immediately preceding the next policy anniversary.  During the continuance of the Group Policy, policy anniversaries are deemed to occur on July 1 of each year.  If and when the Group Policy shall be discontinued, the day immediately following the date of such discontinuance shall be deemed to be a policy anniversary.

(16) The term "insurable dependent" means –

    (A)   The member's spouse, or

    (B)   The member's child who is unmarried and
        (i)     who is under the age of eighteen; or
        (ii)    who, before attaining the age of eighteen years, became permanently incapable of self-support; or
        (iii)   who, after attaining the age of eighteen and until the completion of education or training (but not after attaining the age of twenty-three years), is pursuing a course of instruction at an approved educational institution;
        (iv)   and who is a legitimate child, a legally adopted child, a stepchild who is a member of the member's household, or an illegitimate child but, as to the alleged father, only if acknowledged in writing signed by him, or if he has been judicially ordered to contribute to the child's support or has been judicially decreed to be the father of such child, or if he is otherwise shown by evidence satisfactory to the Secretary to be the father of such child; or

    (C)   the member's stillborn child.

(17) The term "Family Group Life Insurance" means the life insurance protection provided under Article VI of the Group Policy and includes all life insurance protection under Article VI of the Group Policy as constituted prior to January 1, 2007.

(18) The term "total disability" means any impairment of mind or body resulting from any type of injury or disease whether mental or physical which continuously renders it impossible for the insured to follow any substantially gainful occupation. Without prejudice to any other cause of disability, the permanent loss of the use of both feet, of both hands, or of both eyes, or of one foot and one hand, or of one foot and one eye, or of one hand and one eye, or the total loss of hearing of both ears, or the organic loss of speech shall be deemed to be total disability. Organic loss of speech will mean the loss of the ability to express oneself, both by voice and whisper, through the normal organs of speech if such loss is caused by organic changes in such organs. Where such loss exists, the fact that some speech can be produced through the use of an artificial appliance or other organs of the body will be disregarded.

(19)(A) The term "substantially gainful occupation" means any kind of work that is reasonably suited to the member based on the member's education, training, skills obtained through life or work experience, and age and which is performed for: (1) more than 20 hours per week; (2) a continuous period of more than six (6) months; and (3) pay or profit.

3

(B) The term "substantially gainful occupation" excludes:  (1) marginal employment as that term is defined in Subsection (20) of Article I; and (2) an unsuccessful work attempt as that term is defined in Subsection (21) of Section 1 of Article I.

(20) The term "marginal employment" means employment from which the insured's annual income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person.  Marginal employment is not a substantially gainful occupation.  If an insured is performing marginal employment, a determination will be made as to whether the insured is capable of following a substantially gainful occupation as defined in Subsection (19) of Section 1 of Article I.

(21) The term "unsuccessful work attempt" means a member's inability to follow a substantially gainful occupation for a continuous period of six (6) months or more during the two year period following separation or release from active duty, active duty for training for a period of not less than 31 days, or assignment as a Ready Reservist due to a disability that exists at separation or release from active duty, active duty for training for a period of not less than 31 days, or assignment as a Ready Reservists and either:

    a.   the work is discontinued or reduced due to the member's disability; or

    b.   the employer discontinues a special condition or accommodation as defined in Subsection (22) of Section 1 of Article I.

(22) The term "special condition or accommodation" means a condition or accommodation without which an individual, due to disability would be unable to work without more supervision or assistance due to disability than required by other workers performing similar work.

2.  Effective October 7, 2013, Section 8 of Article I is replaced with the following:

Section 8.        RECORDS-INFORMATION  TO  BE  FURNISHED-DETERMINATIONS  BY THE POLICYHOLDER AND THE OFFICE

The Policyholder shall maintain or cause to be maintained records from which may be determined the status of each member, insurable dependent and veteran with respect to insurance available under the Group Policy.  The Policyholder shall also maintain or cause to be maintained records from which may be determined the total amount of Servicemembers' Group Life Insurance, Family Group Life Insurance or Veterans' Group Life Insurance under the Group Policy.  The Policyholder shall furnish or cause to be furnished to the Office such information concerning persons insured hereunder as may reasonably be considered to have a bearing on the administration of the insurance hereunder.  The records of the Policyholder as have a bearing on the insurance hereunder shall include, but not be limited to, information regarding enrollment, dependents, beneficiaries, orders, and member contributions and shall be open for inspection by the Office at any reasonable time.  The Policyholder and the Insurance Company agree that disclosure of these documents is governed by the terms of the Confidentiality and Hold Harmless Agreement entered into between the parties on March 31, 2000.

With respect to SGLI disability extensions, the Policyholder shall provide to the Office at the Office's request any information the Policyholder maintains in its usual course of business from which the Office may determine whether a veteran is eligible for the extension.  Such records include, but are not limited to, ratings by the Department of Veterans Affairs regarding the extent of disability of a veteran.

To effect the mailing of Veterans' Group Life Insurance applications by the Office to eligible, recently discharged veterans, the Policyholder shall provide or cause to be furnished

to the Office information sufficient to determine the status of each veteran with respect to eligibility to convert Servicemembers' Group Life Insurance to Veterans' Group Life Insurance. The Office agrees to retain this information for a period of approximately three years and 120 days from the date an eligible veteran is separated from duty.  Thereafter, the information will be deleted.  The Office understands that as a contractor to perform the Policyholder's function of notifying eligible veterans of their entitlement to Veterans' Group Life Insurance, its maintenance and use of the information is subject to the Privacy Act, 5 U.S.C. 552, and 38 U.S.C. 5701. The Office further understands that the use or release of the information for any purpose other than the mailing of Veterans' Group Life Insurance applications will violate the above statutes and expose it to the penalties for violating the statutes.

For the purposes of the Group Policy, determination by the Policyholder of the following shall be conclusive:

(1) The status of any person as a member, as defined in provision (5)(A), (5)(B) or (5)(C) of Section 1 of this Article I, or as a veteran, as defined in provision (9) of said Section 1 or a member of the Individual Ready Reserve or Inactive National Guard and whether or not a person is insured for Servicemembers' Group Life Insurance or Veterans' Group Life Insurance under the Group Policy at any point of time, or as an insurable dependent as defined in provisions (16)(A), (16)(B) or 16(C) of Section 1 of this Article I.

(2) The fact and date of a member's separation or release from active duty or active duty for training.

(3) The fact, date and hours of a member's performance of inactive duty training.

(4) The fact whether a member eligible for Part-Time Coverage suffered disability or death while on active duty, active duty for training, or inactive duty training or while proceeding directly to or returning directly from such duty so as to be insured at death, or for one hundred and twenty days after the date of termination of such duty.

(5) The fact and dates with respect to a member's (i) absence without leave, (ii) confinement by civil authorities under a sentence adjudged by a civil court, or (iii) confinement by military authorities under a court-martial sentence involving total forfeiture of pay and allowances.

(6) The operation of the provisions of Section 10 with respect to any member or veteran.

3. Effective October 7, 2013, Section 1 of Article II is replaced with the following:

Section 1.        FULL-TIME COVERAGE

Full-Time Coverage insures the life of:

(a) a member who serves in a uniformed service on active duty or active duty for training under a call or order to duty that does not specify a period of less than thirty-one days.

(b) a member not within the scope of (a) above who is assigned in the Ready Reserve of a uniformed service to a unit or position in which he may be required to perform active duty, or active duty for training, and each year will be scheduled to perform at least twelve periods of inactive duty training that is creditable for retirement purposes under chapter 1223 of title 10 (or under chapter 67 of that title as in effect before the effective date of the Reserve Officer Personnel Management Act).

(c) A person who volunteers for assignment to a mobilization category in the Individual Ready Reserve, as defined in section 12304(i)(1) of title 10.

As to members within the scope of (a), (b) and (c) above:

Unless the member elects not to be insured for Servicemembers' Group Life Insurance, Full-Time Coverage protects the member against death from the first day which the member is included within the scope of (a) or (b) above, and from the first day on and after April 1, 2001 as of which the member is included within the scope of (c) above, during such duty or assignment to the Ready Reserve and for one hundred twenty days after separation or release from such duty or assignment. If the member is totally disabled on the date of separation or release from such duty or assignment, which disability continues beyond the one hundred and twenty day period, the life insurance protection of the Full-Time coverage terminates at the end of at the earlier of:

1. The date the insured ceases to be totally disabled, or

2. The date that is two years after the date of separation or release from such duty or assignment.

For purposes of determining whether a member is totally disabled on the date of separation or release from such duty or assignment in connection with extending the life insurance protection of the Full-Time Coverage, the Office shall make such determinations in accordance with this Section, applicable statutes, regulations, interpretive guidance provided by the Policyholder's Office of the General Counsel and Section 1 of Article I.

To be considered for an extension of the life insurance protection of the Full-Time Coverage, a member or a member's fiduciary, guardian, or agent or attorney acting under a valid Power of Attorney shall complete and submit to the Office an application on a form acceptable to the Office and all necessary evidence in support of the application. A determination of total disability will be based upon the totality of evidence provided by the member, a member's beneficiary, a third party, and/or the Department of Veterans Affairs.

The following conditions shall be automatically deemed to be total disability:

1. The conditions listed in Subsection (18) of Section 1 of Article I.

2. A Department of Veterans Affairs rating that a veteran is totally disabled based upon individual unemployability for purposes of disability compensation or pension.

The Office will consider all competent evidence submitted by or at the direction of a member, a member's fiduciary, guardian, agent or attorney acting under a valid Power of Attorney, or by or at the direction of a claimant for insurance proceeds. Any one or more of the following documents can establish that a member is totally disabled, but no single item or particular evidence in support of total disability identified in paragraphs 1 through 5 below will be determinative or controlling:

1. certification from the member's physician as to:
   a. the extent of the member's disability; or
   b. whether any work performed by the member is aggravating the member's disability or harming the member's health.

2. the member's medical records.

3.  certification from an individual at the member's employer with appropriate authority and knowledge indicating that due to the member's disability the member was working:

    a.  in a segregated vocational or non-vocational program for disabled persons, such as a Federal, state or local government recognized sheltered workshop, adult activity center, work activity center or day treatment center; or

    b.  under employer authorized special conditions or accommodations that take into account the member's disability.

4.  disability ratings rendered by the Department of Veterans Affairs.

5.  certification from the member's employer that the member had an unsuccessful work attempt.

Neither the Policyholder nor the Office has any obligation to develop or create evidence in support of an application for total disability.

For the purposes of the Group Policy, determination by the Office that a member is totally disabled on the date of his or her separation or release from active duty, active duty for training for a period of not less than 31 days, or assignment as a Ready Reservist through the date that the Office makes the determination shall be conclusive.

Any written notice of a member of his election not to be insured for Servicemembers' Group Life Insurance under the Group Policy shall be automatically canceled:

(1)  if the member enters on duty in another uniformed service.

(2)  if the member re-enters on duty in the same uniformed service after separation or release from all duty in that uniformed service, or

(3)  in the case of a member on active duty or active duty for training under a call or order to duty that does not specify a period of less than thirty-one days, at the end of the day before the date one hundred and twenty-one days after the member's separation or release from such duty.

If a member insured under Full-Time Coverage furnishes his uniformed service written notice of his election not to be insured for Servicemembers' Group Life Insurance under the Group Policy, his Full-Time Coverage shall automatically terminate at the end of the day before the first day of the month following the month during which the member's uniformed service receives such written notice.

A member who has filed written notice of his election not to be insured for Servicemembers' Group Life Insurance under the Group Policy may cancel such election, but such cancellation shall not become effective unless he complies with the requirements applicable under Section 4 of Article II, except that if a member elected not to be insured for Servicemembers' Group Life Insurance under the Group Policy solely for the purpose of maintaining Veterans' Group Life Insurance in effect, cancellation of his notice of election not to be insured for Servicemembers' Group Life Insurance under the Group Policy shall become effective automatically upon termination of his Veterans' Group Life Insurance.

A member within the scope of (a) above who, on the effective date of an automatic coverage change, is (i) absent without leave, (ii) confined by civil authorities under a sentence adjudged by a civilian court, or (iii) confined by military authorities under a court-martial sentence involving total forfeiture of pay and allowances, which absence or confinement has continued for a period of more than thirty-one days, shall not be insured under the Group Policy unless he is restored to active duty with pay or to active duty for training with pay, at which time he

shall be insured automatically, and any beneficiary designation or election of settlement in effect at any prior termination of insurance by reason of (i), (ii) or (iii) shall be automatically revived as of the date the member is restored to duty with pay.

The Full-Time Coverage on a member within the scope of (a) above who is insured therefor shall automatically terminate at the end of the day before the date of the thirty-second day of a continuous period of (i) absence without leave, (ii) confinement by civil authorities under a sentence adjudged by a civilian court, or (iii) confined by military authorities under a court-martial sentence involving total forfeiture of pay and allowances.  Any Full-Time Coverage so terminated as the result of absence without leave or of confinement together with any beneficiary designation or election of settlement in effect for such termination thereof, shall be automatically revived as of the date of member is restored to duty with pay.

In any event, all Full-Time Coverage under the Group Policy on members within the scope of (a) (b) or (c) above shall automatically terminate at the end of the day before the date of discontinuance of the Group Policy with respect to insurance to which provision (A) of Section 5 of Article 1 is applicable.

Except as may hereafter be provided in the Group Policy, no Full-Time Coverage shall become effective under the Group Policy on any person whose rights to insurance are forfeited pursuant to the provisions of Section 10 of Article I, and any Full-Time Coverage on a member shall automatically terminate at the end of the day before the date of such forfeiture.

It is agreed that such changes shall form a part of the Group Policy, but not unless both the Policyholder and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date 10/8/2013          By _Paul Vittee_

DEPARTMENT OF VETERANS AFFAIRS

Date 10/7/2013          By _Vincent E. Markey_
Director, VA Insurance Service

8

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called the Insurance Company)

AMENDMENT TO GROUP POLICY G-32000
(to be attached to and made a part of the Group Policy)

The capitalized terms used but not defined in this amendment shall have the meaning ascribed to such terms in the Group Policy.

The Group Policy is modified as follows:

1. Effective November 2, 2012, Section 3 of Article I is replaced with the following:

Section 3. BENEFICIARIES

A member insured for Servicemembers' Group Life Insurance or a veteran or member of the Individual Ready Reserve or Inactive National Guard insured for Veterans' Group Life Insurance may designate a beneficiary and may, from time to time, change his designation only by filing written notice thereof, over his signature, prior to his death with his uniformed service or with the Office as required by the further provisions of this Section. Consent of the beneficiary shall not be requisite to any change of beneficiary.

With respect to the beneficiary for Family Group Life Insurance, the member will be the designated beneficiary. In the event of the member's death before payment can be made, payment will be made to the member's beneficiary(ies) according to this Section 3.

Except as provided below, any designation of beneficiary made by any member shall apply to the member's Full-Time Coverage or Part-Time Coverage, if any, under Article II of the Group Policy until revoked, changed or terminated. Any designation of beneficiary made by any member shall automatically cease to be effective (1) if his insurance under the Group Policy terminates following separation or release from all duty in a uniformed service, (2) if the member enters on duty in another uniformed service, (3) if the member re-enters on duty in the same uniformed service more than one calendar day after separation or release from all duty in that uniformed service, (4) in the case of a member insured under Full-Time Coverage when such insurance terminates or (5) except as provided in the next following paragraph, if the member becomes insured for Veterans' Group Life Insurance in accordance with Article III of the Group Policy. However, (2) and (3) above shall not apply to any insurance continued under the Group Policy during the one hundred twenty days after separation or release from duty which is not replaced because the member upon entry or re-entry on duty in a uniformed service during that one hundred twenty day period did not reacquire insurance or reacquired a lesser amount of insurance under Sections 1, 2 and 3 of Article II of the Group Policy.

If Veterans' Group Life Insurance on the life of a veteran or member of the Individual Ready Reserve or Inactive National Guard becomes effective on the day following termination of his Servicemembers' Group Life Insurance, any designation of beneficiary in effect for his Servicemembers' Group Life Insurance at termination thereof shall be considered a designation of beneficiary for his Veterans' Group Life Insurance, but such designation shall cease to be effective if the person revokes it or designates a beneficiary for Veterans' Group Life Insurance in accordance with the other provisions of this Section. In any event such designation shall cease to be effective on the sixty-first day after the effective date of the person's Veterans' Group Life Insurance, unless the person is then incompetent in which event it may continue until the incompetency is removed.

Any beneficiary designation made by a person insured for Veterans' Group Life Insurance in accordance with Article III of the Group Policy shall automatically cease to be effective if his Veterans' Group Life Insurance terminates.  A beneficiary designation made by a person for Veterans' Group Life Insurance shall not have any application with respect to any amount of Servicemembers' Group Life Insurance for which the person may thereafter become insured in accordance with the provisions of Article II of the Group Policy.  The beneficiary designation made for Veterans' Group life Insurance may, however, supersede a prior Servicemembers' Group Life Insurance designation during the one hundred twenty day extension of that coverage if the individual so designates in his Veterans' Group Life Insurance application form.

Written notice of a beneficiary designation or revocation of a beneficiary designation must be made (1) to the Office in the case of (a) a veteran or member of the Individual Ready Reserve or Inactive National Guard insured for Veterans' Group Life Insurance in accordance with Article III of the Group Policy, (b) any other member while he is insured for Servicemembers' Group Life Insurance after his separation or release from or termination of duty, and (2) to the member's uniformed service in all other instances.  A designation or change of beneficiary shall take effect only if it is made and received as required in (1) or (2) of this paragraph, as the case may be, prior to the death of the member or veteran or member of the Individual Ready Reserve or Inactive National Guard, and shall be effective as of the date of such receipt.

The amount of insurance payable because of the death of an individual insured under the Group Policy shall not be payable to any person described in 1), 2) or 3) below:

1) A person who is convicted of intentionally and wrongfully killing the insured or determined in a civil proceeding to have intentionally and wrongfully killed the insured,

2) A person who is convicted of assisting or aiding or determined in a civil proceeding to have assisted or aided a person described in 1) above, and

3) A member of the family of a person described in 1) or 2) above, who is not related to the insured by blood, legal adoption or marriage. A member of the family of a person convicted of intentionally and wrongfully killing the insured or assisting or aiding in the intentional and wrongful killing of the insured or determined in a civil proceeding to have intentionally and wrongfully killed the insured or assisting or aiding in the intentional and wrongful killing of the insured, means an individual with any of the following relationships; a) spouse, b) biological, adopted or step child, c) biological, adoptive or step parent, d) biological, adopted or step sibling and e) biological, adoptive, or step grandparent or grandchild.

If at the death of any member or veteran or member of the Individual Ready Reserve or Inactive National Guard insured under the Group Policy, there shall be more than one designated beneficiary, then, unless such person shall have specified their respective shares, such beneficiaries shall share equally.  The rights and interests of any designated beneficiary are automatically terminated when 1) the designated beneficiary, because he is a person described in 1), 2) or 3) in the preceding paragraph, is not eligible to receive the amount of insurance payable or 2) he predeceases the member or veteran or member of the Individual Ready Reserve or Inactive National Guard, and his share, unless the member or veteran or member of the Individual Ready Reserve or Inactive National Guard otherwise specified in his written notice, shall be distributed equally among surviving designated beneficiaries, or entirely to the survivor. If at the death of the member or veteran or member of the Individual Ready Reserve or Inactive National Guard, there be no surviving designated beneficiary, then the amount of the insurance payable for which there is no surviving designated beneficiary shall be payable to the person or persons listed below surviving at the date of the insured person's death in the following order of precedence:

(1) To the widow or widower of the member or veteran or member of the Individual Ready Reserve or Inactive National Guard;

(2) If neither of the above, to the child or children of the member or veteran or member of the Individual Ready Reserve or    Inactive National Guard, in equal shares, and descendants of deceased children by representation;

(3) If none of the above, to the parents of such member or veteran or member of the Individual Ready Reserve or Inactive National Guard, in equal shares, or the survivor of them;

(4) If none of the above, to the duly appointed executor or administrator of the estate of such member or veteran or member of the Individual Ready Reserve or Inactive National Guard;

(5) If none of the above, to other next of kin of such member or veteran or member of the Individual Ready Reserve or Inactive National Guard as may be determined by the Office to be entitled under the laws of domicile of such member or veteran or member of the Individual Ready Reserve or Inactive National Guard. Payment to any person by virtue of the preceding sentence shall be a bar to recovery by any other person.

If any person otherwise entitled to payment as a designated beneficiary or under the order of precedence set forth in this Section does not make claim therefor within one year after the death of the member or veteran or member of the Individual Ready Reserve or Inactive National Guard, or if payment to such person within that period is prohibited by Federal statute or regulation, payment shall be made in the order of precedence as if such person had predeceased the member or veteran or member of the Individual Ready Reserve or Inactive National Guard. Payment to any person by virtue of the preceding sentence shall be a bar to recovery by any other person.

If, within two years after the death of the member or veteran or member of the Individual Ready Reserve or Inactive National Guard, no claim for payment has been filed by any person entitled thereto as a designated beneficiary or under the order of precedence set forth in this Section, and neither the Policyholder nor the Office has received any notice that any such claim will be made, payment may be made to a claimant as may in the judgment of the Policyholder be equitably entitled thereto, and such payment shall be a bar to recovery by any other persons.

A beneficiary designation and settlement option filed by a member with his uniformed service will be effective with respect to any increased insurance under the Group Policy. The insurance shall be settled in the same proportionate amount as the portion designated for such beneficiary or beneficiaries based on the amount of insurance heretofore in effect.

Payment of claim under the Group Policy made directly to a minor widow or widower on his or her own behalf pursuant to 38 U.S.C. 1970(f) shall be a complete acquittance to the Insurance Company.

Pursuant to 38 U.S.C. 1970(g), payment of benefits due or to become due under the Group Policy made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to (1) collection of amounts not deducted from the member's pay, or collected from him by the Secretary concerned under 38 U.S.C. 1969(a); (2) deduction of unpaid premiums from the insurance proceeds pursuant to 38 U.S.C. 1977(c) in the case of certain veterans who were mentally incompetent when becoming insured for Veterans' Group Life Insurance under Article III of the Group Policy; (3) deduction of unpaid premiums from the insurance proceeds when a veteran dies with unpaid premiums while in the Grace Period defined in Section 5 (C) (2) of this Article I; (4) levy under sub-chapter D of chapter 64 of the Internal Revenue Code of 1954 (relating to the seizure of property for the collection of taxes); and (5) the taxation of any property purchased in part or wholly out of such payments.

It is agreed that such changes shall form a part of the Group Policy, but not unless both the Policyholder and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date  8/20/14

By _Paul Virtell_

Name (print)  Paul Virtell

Title  Vice President

DEPARTMENT OF VETERANS AFFAIRS

Date  8/5/2014

By _Vincent E. Markey_

Name (print) VINCENT E. MARKEY

Title Director, VA Insurance Service

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called the Insurance Company)

AMENDMENT TO GROUP POLICY G-32000
(to be attached to and made a part of the Group Policy)

The capitalized terms used but not defined in this amendment shall have the meaning ascribed to such terms in the Group Policy.

The Group Policy is modified as follows:

Effective November 1, 2012, the first two paragraphs of Article III shall read as follows:

(1) A veteran who is separated or released from a period of active duty or active duty for training or inactive duty training scheduled in advance by competent authority or from assignment to the Ready Reserves or from assignment to a mobilization category in the Individual Ready Reserves as defined in section 12304(i)(1) of title 10, U.S.C. and who makes proper written request for such insurance not more than one year after termination of his Servicemembers' Group Life Insurance under the Group Policy. If written request, on a form satisfactory to the Office, and payment of the first monthly premium for such insurance are made to the Office within one hundred and twenty days after separation or release from such duty or thereafter while the veteran is insured for Servicemembers' Group Life Insurance under the Group Policy, the effective date of Veterans' Group Life Insurance for such person shall be the day following the date of termination of his Servicemembers' Group Life Insurance under the Group Policy. If written request, on a form satisfactory to the Insurance Company, and payment of the first monthly premium for such insurance are made to the Office between one hundred and twenty-one days and two hundred and forty days after separation or release from such duty, the effective date of Veterans' Group Life Insurance for such person shall be the later of the date on which the Office receives the written request for coverage or the payment of the first monthly premium. If written request, on a form satisfactory to the Insurance Company, and payment of the first monthly premium is made within one year and one hundred and twenty days after separation or release from such duty but not within two hundred and forty days after separation or release from such duty, evidence of good health of the veteran satisfactory to the Insurance Company must be furnished to the Office, without expense to the Insurance Company, in order for the veteran to become insured for Veterans' Group Life Insurance. If the evidence is determined by the Insurance Company to be satisfactory, the effective date of Veterans' Group Life Insurance for such person is the date such evidence is furnished to the Office.

(2) A person who is a member of the Individual Ready Reserve, except when covered as a member as defined in Section 1(5)(C) in Article I, or of the Inactive National Guard of any uniformed service who makes proper written request for such insurance in a form satisfactory to the Office and pays the first monthly premium no later than one-hundred and twenty days after the later to occur of January 1, 1986 or the date such person is assigned to the Individual Ready Reserve or the Inactive National Guard of any uniformed service. If written request, on a form satisfactory to the Insurance Company, and payment of the first monthly premium are made between one hundred and twenty-one days and two hundred and forty days after the later to occur of January 1, 1986 or the date such person is assigned to the Individual Ready Reserve or the Inactive National Guard of any uniformed service, the effective date of Veterans' Group Life Insurance shall be the later of the date on which the Office receives the written request or the payment of the first monthly premium. If written request, on a form satisfactory to the Insurance Company, and payment of the first monthly premium are made within the one year period following the later of January 1, 1986 or the person's date of assignment to the Individual Ready Reserve or the Inactive National Guard, but not within two hundred and forty days from the later to occur of January 1, 1986 and the date such person is

assigned to the Individual Ready Reserve or the Inactive National Guard of any uniformed service, evidence of good health of the member satisfactory to the Insurance Company must be furnished to the Office, without expense to the Insurance Company, in order for the member to become insured for Veterans' Group Life Insurance. If the evidence is determined by the Insurance Company to be satisfactory, the effective date of the Veterans' Group Life Insurance for the person is the date such evidence is furnished to the Office.

It is agreed that such changes shall form a part of the Group Policy, but not unless both the Policyholder and the Insurance Company have hereto affixed their respective signatures.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

Date  8/20/14

By _____

Name (print)  Paul Virtell

Title  Vice President

DEPARTMENT OF VETERANS AFFAIRS

Date  8/5/2014

By _____

Name (print) VINCENT E. MARKEY

Title Director, VA Insurance Service

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called the Insurance Company)

AMENDMENT TO GROUP POLICY G-32000
(to be attached to and made a part of the Group Policy)

The capitalized terms used but not defined in this amendment shall have the meaning ascribed to such terms in the Group Policy.

The Group Policy is modified as follows:

Effective July 1, 2013, Section 9 of Article I shall read as follows:

Section 9.   DISCONTINUANCE OF THE GROUP POLICY

The Group Policy may be discontinued by the Policyholder at any time with respect to insurance to which provision (A) of Section 5 of Article I is applicable, subject to said provision (A) and to provision (C)(1) of said Section 5, provided that written notice of such discontinuation is provided by the Policyholder to the Insurance Company, and provided that such written notice is received by the Insurance Company at least sixty days in advance of the actual discontinuation date.

The Group Policy may, with respect to insurance to which provision (A) of said Section 5 is applicable, be discontinued by the Insurance Company on any monthly premium due date for such insurance specified by the Insurance Company in a written notice of such discontinuance to the Policyholder, provided such premium due date is at least sixty days after receipt by the Policyholder of such written notice. If the Group Policy is thus discontinued as of a monthly premium due date, then all insurance coverage to which provision (A) of said Section 5 is applicable will be discontinued as of that date, including insurance coverage on any insureds in the 120 day or two year period following separation or release from duty or assignment described in Article II Section 1.

If the Group Policy is discontinued with respect to insurance to which provision (A) of said Section 5 is applicable, the Group Policy shall, as the insurance of each person to which provision (B) of said Section 5 is applicable, be deemed to terminate on the same date as the date of discontinuance of the Group Policy with respect to insurance to which provision (A) of said Section 5 is applicable.

All death claims received by to the Insurance Company prior to the discontinuation date but not yet paid as of the discontinuation date shall be paid by the Insurance Company upon the Office receiving due proof in writing that the person died while insured under the Group Policy provided that the requirements of Section 2 of Article I are satisfied. All claims for an accelerated payment of death benefits that have been received by the Insurance Company prior to the discontinuation date but are not yet paid as of the discontinuation date shall be paid by the Insurance Company upon the Office receiving due proof in writing that the person qualified for an accelerated payment of death benefits while insured under the Group Policy provided that the requirements of Article V are met.

For claims received by the Insurance Company prior to the discontinuation date and paid after the discontinuation date, the maximum amount to be paid by the Insurance Company shall be the amount that the Insurance Company determines may be payable by the Insurance Company as of the discontinuation date. Any increased amount of proceeds to which the beneficiary may be

entitled after the discontinuance date on a claim received by the Insurance Company and paid by the Insurance Company prior to the discontinuance date shall be the liability of the Policyholder.

All claims received by the Insurance Company on or after the discontinuation date will not be the liability of the Insurance Company; all claims received by the Insurance Company on or after the discontinuation date of the Group Policy shall be the liability of the Policyholder and shall be forwarded to the Policyholder as soon as practicable.

In the event of discontinuance of the Group Policy, the Insurance Company will continue to perform the administration of the Servicemembers' Group Life Insurance, Veterans' Group Life Insurance, and Family Servicemembers' Group life Insurance programs, until the earlier of a) ten months from the date that the Group Policy ends, and b) a date mutually agreed to by the Insurance Company and the Policyholder. This continuation of the administration is subject to the execution of a service agreement between the Insurance Company and the Policyholder.

In the event of discontinuance of the Group Policy, all records and files in the Insurance Company's possession pertaining to the insurance under the Group Policy and all computer software and equipment and any other equipment purchased by the Insurance Company in connection with the insurance under the Group Policy for which the Insurance Company was reimbursed pursuant to the provisions of Item (a)(ii) of the Schedule of Maximum Expense and Risk Charges of the Group Policy, shall be forwarded to the Policyholder by the Insurance Company in a timely fashion. The Insurance Company shall prepare, and maintain, a list that identifies such records, files and equipment and furnish said list to the Policyholder on demand. In the event that the Policyholder requires the Insurance Company's assistance in order to acquire any specialized knowledge necessary to use and maintain such records, files and equipment, the Insurance Company shall render such assistance, as may be mutually agreed between the Insurance Company and the Policyholder.

Consistent with Section 18, Article I, in the event of discontinuance of the Group Policy, no amendment to title 38 United States Code which is enacted or effective on or after the date notification of termination is provided shall have any effect on the rights or liabilities of the Policyholder or the Insurance Company under the Group Policy except pursuant to appropriate amendment to the Group Policy signed by the Policyholder and the Insurance Company.

It is agreed that such changes shall form a part of the Group Policy, but not unless both the Policyholder and the Insurance Company have hereto affixed their respective signatures.

Date _8/20/14_

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

By _Paul Virtell_

Name (print) _Paul Virtell_

Title _Vice President_

Date _8/5/2014_

DEPARTMENT OF VETERANS AFFAIRS

By _Vincent E. Markey_

Name (print) VINCENT E. MARKEY

Title Director, VA Insurance Service

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

(hereinafter called the Insurance Company)

AMENDMENT TO GROUP POLICY G-32000 (to be attached
to and made a part of the Group Policy)

The capitalized terms used but not defined in this Amendment shall have the meaning ascribed to such terms in the Group Policy. The Group Policy is modified as follows:

1.   Effective December 26, 2012, Section 4(B) of Article VI is replaced with the following:

   (B) An insurable dependent may not be insured at any time by the insurance coverage under the Group Policy by more than one member. If an insurable dependent who is a spouse is otherwise eligible to be insured by the coverage of more than one member under the Group Policy, the spouse shall be insured by the member to whom the spouse is currently married. If an insurable dependent who is a child as defined by Section 1(B) of Article VI is otherwise eligible to be insured by the coverage of more than one member under the Group Policy, the child shall be insured by the coverage of the member whose eligibility for insurance under the Group Policy occurred first, except that if that member does not have legal custody of the child, the child shall be insured by the coverage of the member who has legal custody of the child. If an insurable dependent who is a stillborn child is otherwise eligible to be insured by the coverage of more than one member under the Group Policy, the child shall be insured by the coverage of the child's insured biological mother.

It is agreed that such changes shall form a part of the Group Policy, but not unless both the Policyholder and the Insurance Company have hereto affixed their respective signatures.

Date _8/20/14_

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

By _Paul Vivtell_

Name (print) _Paul Vivtell_

Title _Vice President_

Date _8/5/2014_

DEPARTMENT OF VETERANS AFFAIRS

By _Vincent E. Markey_

Name (print) VINCENT E. MARKEY

Title Director, VA Insurance Service

# EXHIBIT B



## Prudential

**Office of Servicemembers'
Group Life Insurance**

OSGLI
P.O. Box 41618
Philadelphia, PA 19176-1618

Phone: 800-419-1473
Fax: 800-236-6142

000000295 POG007DS1203193369509 01 000000

December 2, 2019

CARLOS R VELAZQUEZ
3400 MARTIN MEADOWS DR NE
RIO RANCHO, NM 87144

Control Number: 01072281

Dear Carlos R Velazquez,

Thank you for being a valued Veterans' Group Life Insurance (VGLI) member. Following is your current beneficiary designation:

**Primary**

| Name | Share |
|------|-------|
| ROBERTO VELAZQUEZ | 35.00% |
| A███████V███ | 35.00% |
| MARIA DE LA LUZ RAMIREZ LOPEZ | 30.00% |

If this is correct, no further action is required. If you would like to change your beneficiary designation in the future, you can do it quickly and easily by accessing your VGLI Online Account. Your online account also lets you view coverage details, pay bills, and sign up for convenient billing options, including VGLI Auto Pay, where your premium payments are deducted automatically from your checking or savings account. If you don't have a VGLI Online Account, create one by following these instructions:

- Visit www.benefits.va.gov/insurance
- Select "Access My Policy Online" from the left-hand menu
- On the next screen, scroll down and select "VGLI Online Policy Access"
- When you arrive at the VGLI home page, click "Create an Account"
  (You will need your Control Number to create an Account. Your Control Number is an eight-digit number that can be found above or on your most recent billing statement.)

If you prefer, you can also update your beneficiaries by downloading a VGLI Beneficiary Designation/Change form available at www.benefits.va.gov/insurance and returning the completed form to us via mail, fax, or email.



EXHIBIT C

# STATE OF NEW MEXICO
## CERTIFICATE OF DEATH

New Mexico Vital Records and Health Statistics
State of New Mexico
United States of America

REV (8/13)

No. 4468017

Hold up to light to view. • The back of this document contains a watermark • This document is not authentic unless reproduced on safety paper displaying the Raised Seal of New Mexico

| DECEDENT'S LEGAL NAME | | | IF FEMALE, MAIDEN NAME |
|---|---|---|---|
| <<<Carlos Rafael Velazquez>>> | | | <<<>>> |

| DATE OF DEATH | TIME OF DEATH | | SEX | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|
| December 25, 2019 | 11:00   AM ☐  PM ☒ | | Male | ▆▆▆4733 |

| MARITAL STATUS | SURVIVING SPOUSE - If wife, maiden name |
|---|---|
| Married | <<<Marilyn Quinones>>> |

| DATE OF BIRTH | BIRTH PLACE | SERVED IN U.S. ARMED FORCES |
|---|---|---|
| ▆▆▆1969 | Distrito Fedoral, Mexico | Yes ☐   No ☐ |

| DECEDENT'S RACE | TRIBE | HISPANIC |
|---|---|---|
| White | <<<>>> | Yes ☒   No ☐ |

| DECEDENT'S RESIDENCE COUNTY | DECEDENT'S RESIDENCE STATE |
|---|---|
| Bernalillo | New Mexico |

| MOTHER'S FULL MAIDEN NAME | FATHER'S FULL NAME |
|---|---|
| <<<Maria De La Luz Ramirez>>> | <<<Bernardo Velazquez>>> |

| METHOD OF DISPOSITION | DISPOSITION LOCATION |
|---|---|
| ☐ Burial   ☐ Donation   ☐ Removal from State  ☒ Cremation   ☐ Entombment   ☐ Other (Specify): <<<>>> | Daniels Family Crematory |

| FUNERAL SERVICE FACILITY | COUNTY OF DEATH |
|---|---|
| Daniels Family Funeral Services - Garcia Mortuary | Bernalillo |

| PLACE OF DEATH | TYPE OF PLACE | NAME OF PERSON CERTIFYING CAUSE OF DEATH |
|---|---|---|
| 3400 Martin Meadows Drive | Decedent's Residence | <<<Ian Paul MD OMI>>>  Signature Electronically Authenticated |

| MANNER OF DEATH | ☐ Natural   ☐ Accident   ☐ Homicide   ☒ Suicide   ☐ Undetermined   ☐ Pending Investigation |
|---|---|

**CAUSE OF DEATH**

PART I. Events such as diseases, injuries, or complications that directly caused the death.

a. Gunshot wound of head

b. <<<>>>

c. <<<>>>

d. <<<>>>

PART II. Other significant conditions contributing to death

<<<>>>

FOR SOCIAL SECURITY USE ONLY

| File Number: | 2019-018331 |
|---|---|
| File Date: | January 21, 2020 |
| Order Number: | 20200108002 |

*Renee Valencia*, State Registrar

CERTIFIED COPY OF VITAL RECORD
This is a true and exact reproduction of all or part of the document officially registered and filed with the New Mexico Bureau of Vital Records and Health Statistics, Department of Health.

WARNING: IT IS ILLEGAL TO ALTER, COPY OR COUNTERFEIT THIS CERTIFICATE.
ADVERTENCIA: ES ILEGAL ATERAR, COPIAR O FALSIIFICAR ESTE CERTIFICADO.

DATE ISSUED Jan-21-2020

# EXHIBIT D

 **Prudential**

**Office of Servicemembers'
Group Life Insurance**

## HOW TO COMPLETE A CLAIM FOR DEATH BENEFITS

THIS FORM SHOULD BE USED WHEN THE DECEASED HAD INSURANCE IN FORCE UNDER SERVICEMEMBERS' GROUP LIFE INSURANCE (SGLI) OR VETERANS' GROUP LIFE INSURANCE (VGLI).

**GENERAL INSTRUCTIONS FOR BOTH SGLI & VGLI CLAIMS, UNLESS OTHERWISE SPECIFIED.**

| | |
|---|---|
| Item 1 | Provide full name of the deceased Service Member or Veteran. |
| Item 2 | Provide Social Security Number of deceased. |
| Item 3 | Provide date of death of deceased. |
| Item 4,5,6 **(SGLI ONLY)** | Provide branch of service, duty status on date of death (if known), and date of discharge or separation (if known) of deceased. |
| Item 7,8,9,10 | Provide your full name, relationship to deceased, your date of birth, and Social Security Number. |
| If you were married to the deceased when he/she died, but were NOT named as his/her insurance beneficiary, complete items 11A through 14C as applicable. | |
| If you were NOT married to the deceased when he/she died and were not specifically named as his/her insurance beneficiary, complete Part II through 15D. Be sure to provide the required information as to the deceased's marital status and any children. In items 15A through 15D, provide the information about persons indicated in the answers to the preceding questions. Use a separate signed sheet if necessary. | |
| Complete Part III if you were not named as the insurance beneficiary, were NOT married to the deceased at his/her death, and are not a parent of the deceased. | |
| Parts IV and V must be completed by all claimants. | |

**PAYMENT OF DEATH BENEFITS**

SGLI and VGLI death benefits will be paid to the beneficiary designated by the insured. If no beneficiary has been named, the proceeds are payable to:

- The widow or widower of the insured; if none, it is payable to
- The child or children in equal shares with the share of any deceased child distributed among the descendants of the child; if none, it is payable to
- Parent(s) in equal shares; if none, it is payable to
- A duly appointed executor or administrator of the insured's estate, and if none, to
- Other next of kin.

| | |
|---|---|
| **For SGLI Claims Only** (Active Duty, Active Duty for Training, Inactive duty training, Reserves, Guard) | - If the deceased died while on active duty, or while a member of a Reserve or National Guard Unit, the Office of Servicemembers' Group Life Insurance will be furnished with proof of death by the Uniformed Service.<br>- If you require assistance regarding a member's SGLI coverage, contact the branch Casualty Office.<br>- The completed claim form must be returned to: **Branch Casualty Office (DO NOT SUBMIT TO OFFICE OF SERVICEMEMBERS' GROUP LIFE INSURANCE, OSGLI)** |
| **For VGLI Claims Only** (Veterans who applied for VGLI coverage and had it in effect at the time of death.) | - The claimant must submit certified copy of the death certificate.<br>- The completed form must be returned to:<br><br>The Prudential Insurance Company of America<br>Office of Servicemembers' Group Life Insurance<br>PO Box 70173<br>Philadelphia, PA 19176-0173 |



**Prudential**

Office of Servicemembers'
Group Life Insurance

| CLAIM FOR DEATH BENEFITS<br>Servicemembers' Group Life Insurance<br>Veterans' Group Life Insurance<br><br>Note: This form is not to be used for National Service Life<br>Insurance (NSLI) or United States Government Life Insurance | **SGLI Claims** | Return completed form to the Branch of Service Casualty Office. **DO NOT** send directly to Office of Servicemembers' Group Life Insurance. |
|---|---|---|
| | **VGLI Claims** | Return completed form to:<br>The Prudential Insurance Company of America<br>Office of Servicemembers' Group Life Insurance<br>P.O. Box 70173<br>Philadelphia, PA 19176-0173 |

### PART I – Information of Deceased and Claimant

**1. Name of deceased (first middle last)**
Carlos Rafael Velazquez

**2. Social Security Number** ██████ 4733

**3. Date of death** 25 / Dec / 2019

**4. Branch of service**
Army Ng

**5. Duty status on date of death (if known)**
☐ Active Duty  ☒ Discharged or Separated
☐ Drilling Reservist  ☐ Individual Reservist
☐ Ready

**6. If discharged or separated, give date (if known) (month day year)**
08 / 28 / 2016

**7. Your name (first middle last)**
Maria del Pilar Bautista Bellido

**8. Your relationship to the deceased**
Sister

**9. Your date of birth (month day year)** ██████ 1971

**10. Your Social Security Number**

### If you are the widow or widower of deceased complete Items 11A through 14C

**11A. Date of marriage (month day year)**

**11B. Place of marriage (City & State)**

**12. Did the marriage continue until date of death?** ☐ Yes  ☐ No

**13A. Did deceased have any previous marriages? (If yes, complete 13B & 13C)** ☐ Yes  ☐ No

**13B. Previous marriage terminated by:** ☐ Death  ☐ Divorce

**13C. Date previous marriage terminated (if divorced within last 5 years, attach copy of the divorce decree).**

**14A. Did you have any previous marriages? (If yes, complete 14B & 14C)** ☐ Yes  ☐ No

**14B. Previous marriage terminated by:** ☐ Death  ☐ Divorce

**14C. Date previous marriage terminated (if divorced within last 5 years, attach copy of the divorce decree).**

### PART II – Information concerning the next of kin of the deceased
### If you are not the named beneficiary, widow, or widower of the deceased, complete Parts II and III

In the table below, list the name, age, relationship, and address of:

(a)  Widow or widower  ☐ None  If none, was insured ever married?  ☐ Yes  ☐ No
If Yes, did marriage terminate by: Divorce (mm dd yyyy) _____  Death (mm dd yyyy) _____

(b)  If there is no surviving widow or widower, list all the children of the deceased. Include any adopted child or illegitimate child and indicate each child's status. List the descendants of any deceased child or children. If no children, check box: ☐

(c)  If there are no children or descendants of children, list the surviving parent or parents.
Is the father deceased?  ☐ Yes  ☐ No  Is the mother deceased?  ☐ Yes  ☒ No

(d)  If there are no survivors within the degrees indicated in (a) through (c), list below the next of kin who may be capable of inheriting from the deceased (brothers, sisters, descendants of deceased brothers or sisters, etc.).

| 15A. Name | 15B. Age | 15C. Relationship to deceased | 15D. Address  Zip: 45615 |
|---|---|---|---|
| Maria de la Luz Ramírez López | 72 | Mother | San Francisco 2612 int 47 Col Parques Santa Cruz del Valle, Tlaquepaque, Jalisco Mx |

### Complete items 16 and 17 ONLY if any of the persons listed above are under the age of 21.

**16. Name and address of guardian for any minor children listed above if one has been appointed by the court. (Attach copy of appointment paper issued by court.)**

**17. If a guardian has not been appointed, will one be appointed?** ☐ Yes  ☐ No

GL.2010.246    Ed. 10/2019



**Prudential**

**Office of Servicemembers'
Group Life Insurance**

Name of Deceased: _Carlos Rafael Velazquez_   SSN of Deceased: ████████ 4733

| PART III – Information concerning the estate of the deceased | |
|---|---|
| **18.** Name and address of the executor or administrator, if any, appointed by the court to settle the estate of the deceased. | **19.** If an executor has not been appointed, will one be appointed? ☐ Yes  ☐ No |

**PART IV – Method of Payment**

I HEREBY CERTIFY that all statements made in this claim are true to the best of my knowledge, information, and belief, and that no evidence necessary to a settlement of this claim is suppressed or withheld. In the event the insured has not previously elected 36 monthly installments, my preferred method of payment is:

☐ Lump Sum – Alliance Account®
☐ Lump Sum – Check
☒ Lump Sum – Electronic Funds Transfer (EFT) – Please complete your banking information below.
☐ 36 equal monthly payments

**Payment will be made by the Alliance Account® if no option is selected.**

**For EFT only – Please provide your banking information below to have the benefit paid by Electronic Funds Transfer.**

Bank Routing Number: `1 2 1 0 0 0 3 5 8`    Bank Account Number: ████████ `2 8 5 0`   ☐ Checking  ☒ Savings

Bank Name: `B B V A   B A N C O M E R ,   S . A .`   Bank Phone Number:

First Name: `M a r i a   d e   l a   L u z`  MI: ☐   Last Name: `R a m i r e z   L o p e z`   0115233369 11329.

Customer's Name
Street Address
City, State, Zip

*Sample Check*                      Check No. 1234

PAY TO THE
ORDER OF_____ $_____

_____ Dollars

Bank Name
Street Address
City, State, Zip

⑆222207349⑆    0012301220 1234⑈     1234

**Bank Routing Number**    **Bank Account Number**   **Check Number (not needed)**

The **bank routing number** is always 9 digits and appears between the ⑆ symbols

The **bank account number** varies in length and may contain dashes or spaces. The ⑈ symbol indicates the end of the account number.

If I have selected payment by Electronic Funds Transfer, I authorize The Prudential Insurance Company of America (Prudential) to make electronic deposits of my Death Claim proceeds into the above account. I understand that I must be the named account holder on this account and that any deposit made to an inactive account agreement will be returned to Prudential and reissued as a manual check. In addition, if any overpayment of such Death Claim proceeds is credited to this account in error, I authorize Prudential to withdraw the difference between the benefit amount paid and the recalculated amount of the benefit actually due under the terms of the insurance coverage.

The Bank of New York Mellon is the Administrator of the Prudential Alliance Account Settlement Option, a contractual obligation of The Prudential Insurance Company of America, located at 751 Broad Street, Newark, NJ 07102-3777. Draft clearing and processing support is provided by The Bank of New York Mellon. **Alliance Account balances are not insured by the Federal Deposit Insurance Corporation (FDIC).** The Bank of New York Mellon is not a Prudential Financial company.

GL.2010.246   Ed. 10/2019                                      SGLV 8283    Page 3 of 4



**Office of Servicemembers'**
**Group Life Insurance**

Name of Deceased: Carlos Rafael Velazquez     SSN of Deceased: ████ 4733

**PART V – Certification by claimant**

I HEREBY CERTIFY that all statements made in this claim are true to the best of my knowledge, information, and belief and that no evidence necessary to a settlement of this claim is suppressed or withheld. Zipcode: 95615

| 20. Signature of claimant | 21. Address (Number and Street, Apt. No., City, State, ZIP Code) San Francisco 2612 interior #47, Colonia Parques Santa Cruz del Valle, Taquepaque, Jalisco, Mexico | 22. Date |
| | | 23. Phone 011528115893060 |

WARNING — Any intentionally false statement in this claim or willful misrepresentation relative thereto is subject to punishment by a fine of not more than $10,000 or imprisonment of not more than 5 years, or both (18 U.S.C. 1001).

**ABOUT THE ALLIANCE ACCOUNT**

1. The funds in an Alliance Account begin earning interest immediately and will continue to earn interest until all funds are withdrawn. Interest is accrued daily, compounded daily, and credited every month. The interest rate may change and will vary over time subject to a minimum rate that will not change more than once every 90 days. You will be advised in advance of any change to the minimum interest rate via your quarterly Alliance Account statement or by calling Customer Support at (877) 255-4262.

2. The interest rate credited to the Alliance Account is adjusted by Prudential at its discretion based on variable economic factors (including, but not limited to, prevailing market rates for short term demand deposit accounts, bank money market rates and Federal Reserve Interest rates) and may be more or less than the rate Prudential earns on the funds in the account.

3. An Alliance Account is an interest bearing draft account established in the beneficiary's name with a draft book. The beneficiary can write drafts for any amount up to the full amount of the proceeds. There are no monthly service fees or per draft charges and additional drafts can be ordered at no cost, but fees apply for some special services including returned drafts, stop payment orders and copies of statements/drafts.

4. **The funds in your Alliance Account are available immediately.** Simply use the drafts to access the account anytime you wish. You can write a draft to yourself (which you can cash or deposit at your own bank) or write a draft to another person or to any business as you need your funds.

5. Alliance Account funds are part of Prudential's General Account and are backed by the financial strength of The Prudential Insurance Company of America which has been in business and serving its customers for over 140 years. **The Alliance Account is not a bank account or a bank product, and therefore, is not FDIC insured.**

6. Accountholders cannot make deposits into an Alliance Account. Only eligible payments from other Prudential insurance policies or contracts may be added to the Alliance Account.

7. You can access the money immediately by using the draft book you will receive. There are no monthly service fees or per draft charges and additional drafts can be ordered at no cost, but fees apply for some special services including returned drafts, stop payment orders and copies of statements/drafts.

The Bank of New York Mellon is the Administrator of the Prudential Alliance Account Settlement Option, a contractual obligation of The Prudential Insurance Company of America, located at 751 Broad Street, Newark, NJ 07102-3777. Draft clearing and processing support is provided by The Bank of New York Mellon. **Alliance Account balances are not insured by the Federal Deposit Insurance Corporation (FDIC).** The Bank of New York Mellon is not a Prudential Financial company.

EXHIBIT E

**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**5/28/2020 4:57 PM**
**CLERK OF THE COURT**
**Paula Rogers**

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT**

D-202-PB-2020-00302

**Case No.** _____

**IN THE MATTER OF THE ESTATE OF**
**CARLOS RAFAEL VELAZQUEZ, Deceased.**

## PETITION FOR FORMAL APPOINTMENT
## OF SPECIAL ADMINISTRATOR

COMES NOW Edwin Quinones (hereinafter, "Petitioner"), by and through his counsel of record, Benjamin Hancock, and asks the Court to appoint a Special Administrator. In support, Petitioner states:

1.    Decedent Carlos Rafael Velazquez (hereinafter, "Decedent") died on December 25, 2019, in Rio Rancho, New Mexico.

2.    On December 25, 2019, a horrific tragedy transpired when the Decedent shot and killed both of his minor children (A███ V█████ and Roberto Velazquez), then murdered his spouse (Marilyn Velasquez), and then finally committed suicide by shooting and killing himself.

3.    Decedent's estate is complex, consisting of real property, bank accounts, investment accounts, and retirement accounts. These assets need to be ascertained and marshaled by a Special Administrator.

4.    Additionally, Petitioner is aware of several life insurance policies that, in light of the suicide of the Decedent, need to be investigated, ascertained, marshaled, and preserved by a Special Administrator.

5.      Petitioner is requesting that the Court appoint Lynn Mostoller as Special Administrator. Lynn Mostoller has extensive probate litigation experience, and has consented to serve as Special Administrator for the purposes of marshaling and preserving the estate assets.

6.      Ms. Mostoller has indicated a willingness to so serve in this case.

7.      Such an appointment is envisioned by New Mexico Probate Code § 45-3-614 (B) which states in pertinent part that "*A Special Administrator may be appointed…by order of the district court on the petition of any interested person and finding, after notice and hearing, that appointment is necessary to preserve the estate or to secure its proper administration.*"

### Prayer.

WHEREFORE, Petitioner prays that this Court set this matter for hearing and, after notice and hearing, appoint Lynn Mostoller as Special Administrator for the purpose of ascertaining and marshaling the assets of Decedent's estate, and preserving those assets pending further order of the Court; and order such further relief as may be proper.

Respectfully submitted,

LAW OFFICE OF BENJAMIN HANCOCK, P.C.

/s/ *Benjamin Hancock*
Benjamin Hancock
One Town Center
6121 Indian School Road NE, Suite 206
Albuquerque, NM 87110
Phone: 505.508.4343
Fax: 505.508.4323
*Attorney for Petitioner Edwin Quinones*

EXHIBIT F

**FILED**
**2ND JUDICIAL DISTRICT COURT**
**Bernalillo County**
**6/15/2020 3:25 PM**
**CLERK OF THE COURT**
**Paula Rogers**

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT**

Case No. D-202-PB-2020-00302

**IN THE MATTER OF THE ESTATE OF**
**CARLOS RAFAEL VELAZQUEZ, Deceased.**

_____

**EDWIN QUINONES,**

   **Plaintiff,**

**v.**

**MARIA DE LA LUZ RAMIREZ,**

   **Defendant,**

**and**

**PRUDENTIAL INSURANCE**
**COMPANY OF AMERICA,**

   **a Nominal Defendant.**

## PETITION FOR DECLARATORY JUDGMENT, FOR INJUNCTIVE RELIEF AGAINST NOMINAL DEFENDANT PRUDENTIAL INSURANCE COMPANY OF AMERICA, AND REQUEST FOR INTERPLEADER

COMES NOW Edwin Quinones (hereinafter "Plaintiff"), by and through his attorney, Benjamin Hancock, and states to the Court as follows:

### Parties, Jurisdiction, & Venue.

1.    Plaintiff Edwin Quinones is an individual residing in Bernalillo County. Edwin is the brother of Decedent Marilyn Velasquez, and is nominated in the last Will and Testament of decedent Carlos Velazquez.

2.      Defendant Maria de la Luz Ramirez (hereinafter, "Defendant Ramirez") is an individual residing in Jalisco, Mexico, and is the surviving mother of Decedent Carlos Velazquez.

3.      Nominal Defendant Prudential Insurance Company of America (hereinafter, "Nominal Defendant Prudential") is a New Jersey corporation authorized to do business in all 50 states of the United States, with its principal place of business in Newark, New Jersey. Plaintiff is not seeking affirmative relief against Nominal Defendant Prudential, who is only joined herein so as to preserve and maintain assets held by Nominal Defendant Prudential.

4.      This Court has jurisdiction, and venue is proper in Bernalillo County.

### Facts Relevant to All Counts.

5.      Decedent Carlos R. Velazquez and Decedent Marilyn Velazquez were married on September 4, 1997.

6.      Two children were born of this union, namely: A███ V█████ (a minor child) and Roberto Velazquez.

7.      On December 25, 2019, a horrific tragedy transpired when the entire family died in a murder-suicide.

8.      Specifically, on that date, Decedent Carlos R. Velazquez shot and killed both of his children, then shot and killed his wife, and then finally committed suicide by shooting and killing himself.

9.      Decedent left behind a life insurance policy with Nominal Defendant Prudential. Upon information and belief, those policy proceeds are in excess of $400,000.

10.     One of the beneficiaries of said life insurance policy is Defendant Ramirez.

11.   A dispute has arisen regarding the proper beneficiaries to life insurance policy proceeds.

12.   Accordingly, Plaintiff now brings this suit asking the Court to construe the rights of the sundry claimants to the life insurance policy proceeds, and to enjoin Nominal Defendant Prudential from distributing said policy proceeds pending resolution of these disputes.

### Count One: Petition for Declaratory Judgment to Construe and the Rights of the Parties to the Insurance Policy Proceeds.

### a. Introduction

13.   Pursuant to Rule 1-010(C) NMRA 2007, the allegations outlined in all preceding paragraphs are incorporated herein by reference.

14.   Plaintiff is requesting that the Court declare the rights, status, and liabilities of the parties pursuant to New Mexico Declaratory Judgment Act, NMSA 1978 §§ 44-6-1 to -15, *et seq*., and pursuant to New Mexico Probate Code Section 45-1-302(B), which empowers this Court in probate proceedings with "full power to make orders, judgments and decrees and to take all other action necessary and proper to administer justice in matters that come before it."

15.   This Court has jurisdiction and is the appropriate forum to determine the effect that a murder has upon the issue of succession to the decedent's property. *Official Comment to UPC § 2-803, ¶4., entitled Effect of Homicide on Intestate Succession, Wills, Trusts, Joint Assets, Life Insurance, and Beneficiary Designations.*

### b. The Policy Proceeds Should Not Pass to Defendant Ramirez Pursuant to the New Mexico "Slayer Statute."

16.   Decedent Carlos R. Velazquez feloniously murdered his wife.

17.   Both the great common law of England and the long body of American jurisprudence have long held that a wrongdoer may not profit from his wrongdoing. *See, e.g., Mut. Life ins co. v Armstrong,* 117 U.S. 591, 600 (1886).

18.   New Mexico has long embraced this common law principle. In *Lenning v. New Mexico State Bd. of Ed.,* 1971-NMCA-072, ¶11, 82, N.M. 608, 609, 485 P.2d, 364, 365, the Court referred to the rule that one may not profit by his own wrongdoing as a "maxim of long standing in Anglo-American jurisprudence." Similarly, our Court of Appeals has stated that "[w]e have consistently followed the ethical maxim that 'no party can profit by his own wrong'." *Proper v Mowry,* 1977-NMCA-080, ¶69, 90 N.M. 710, 720, 568 P.2d 236, 246. The Court referred to the "deeply-rooted maxim that one should not benefit from one's own wrongdoing," in *State v. Sosa,* 2014-NMCA-091, ¶11, 335 P.3d, 764, 768, *cert. denied, State v. Sosa,* 2014-NMCERT-008, 334 P.3d 424. Additionally, the New Mexico Supreme Court has held that one may not acquire, profit, or realize benefits from committing a capital offense, as it is contract to public policy. See *Rose v. Rose*, 79 N.M. 435, 547, 1968-NMSC-115, 444 P.2d 762.

19.   These principles have been codified in the New Mexico Probate Code to specifically apply to the murder of one spouse by another in our so-called "slayer statute," NMSA § 45-2-803, entitled *"Effect of homicide on intestate succession, wills, trusts, joint assets, life insurance and beneficiary designations."*

20.    Applying NMSA § 45-2-803 to this case, any beneficiary designation which takes from the estates of the slaughtered family members is revoked by operation of law.

### c. The Life Insurance Policy Proceeds Will be Required to Satisfy the Wrongful Death Claims that the Slain Family Has Against the Estate of Carlos R. Velasquez.

21.    Decedent Carlos R. Velazquez feloniously murdered his entire family.

22.    The respective estates of the slain family members all have wrongful death claims against Carlos R. Velazquez.

23.    The probate assets of the estate of Carlos R. Velasquez are woefully inadequate to fully and fairly compensate the wrongful death claimants.

24.    However, the Decedent left behind the subject life insurance discussed herein.

25.    The life insurance policy proceeds are a "nonprobate asset" specifically envisioned by the above-referenced section of the New Mexico Probate Code § 45-6-102 entitled *"Liability of nonprobate transferees for creditor claims and statutory allowances."* This section holds that a transferee of a nonprobate asset is liable for the statutory allowances if the probate estate is insufficient to satisfy those allowances. That statute provides in pertinent part:

> … [A] transferee of a nonprobate transfer is subject to liability to any probate estate of the decedent for allowed claims against the decedent's probate estate and statutory allowances to the decedent's spouse and children to the extent the estate is insufficient to satisfy those claims and allowances.

26.    Applying § 45-6-102 to this case:  the life insurance policy proceeds that the Defendant Ramirez is claiming is a *"nonprobate asset."* Defendant Ramirez, as an alternate designated beneficiary, is an ostensible *"nonprobate transferee."*

27.     In the typical scheme of things, such death benefits payable to a designated beneficiary are nonprobate assets that pass to the designated beneficiary without exception.

28.     However, when there are insufficient assets to pay the family allowance and the personal property allowance, a Court can order a personal representative to reach out to nonprobate assets and "claw back" from the nonprobate assets sufficient funds to pay the allowances.

29.     The life insurance policy proceeds should not pass to Defendant Ramirez because they should be preserved to satisfy the wrongful death claims of the murdered wife and the murdered children.

30.     Should the policy proceeds pass to Defendant Ramirez – who is a citizen of the country of Mexico and not of the United States – the assets will be forever gone from the jurisdiction of the United States, and will be unavailable to satisfy the wrongful death claims of the murdered children and the murdered wife.

31.     The Court should find that the policy proceeds do not pass to Defendant Ramirez.

32.     Alternatively, the Court should order that these funds be delivered to the registry of the Court, pending the anticipated "claw back" to satisfy the wrongful death claims.

### Count Two:  Request for injunctive Relief
### (as to Nominal Defendant Prudential only).

33.     Plaintiff incorporates by reference the other allegations found in this pleading as if set forth fully herein.

34.     Plaintiff is seeking injunctive relief against Nominal Defendant Prudential.

35.     If Nominal Defendant Prudential is not restrained, then serious and irreparable harm will result to the estates of the murdered wife and the murdered children.

36.     Specifically, Nominal Defendant Prudential is holding life insurance policy proceeds believed to be in excess of $400,000. Defendant Ramirez is wrongfully making a claim for these policy proceeds, with the intent of removing those policy proceeds from beyond the jurisdiction of the courts of the United States.

37.     The only thing preventing Nominal Defendant Prudential from releasing the $400,000 to one or more named beneficiaries is this pending proceeding.

38.     Upon information and belief, absence an *Order* of this Court preventing Nominal Defendant Prudential from releasing the $400,000 to Defendant Ramirez, then Defendant Ramirez' wrongful actions will result in a wrongful distribution of the $400,000 proceeds.

39.     The ownership of said funds are disputed as set forth herein. If Nominal Defendant Prudential is not immediately restrained from releasing said funds, then irreparable harm will result to the estate of Decedent.

40.     Plaintiff specifically requests that the Court issue an injunction barring Nominal Defendant Prudential from releasing any funds from the proceeds of the life insurance policy held in the name of Decedent Carlos R. Velasquez pending further order of this Court.

### Count Three: Request for Interpleader.

41.     Plaintiff incorporates by reference the other allegations found in this pleading as if set forth fully herein.

42.     Rule 1-022 of the New Mexico Rules of Civil Procedure envision that a Plaintiff may request that a Defendant interplead the funds into the registry of the court under such circumstances as are presented herein.

43.     Accordingly – and pleading in the alternative – Plaintiff requests that the Court order that Nominal Defendant Prudential interplead the funds into the Court Registry pending resolution of these disputes.

### Prayer.

WHEREFORE, Plaintiff prays that this Court set this matter for hearing, and after notice and hearing:

a.      Construe the rights of the parties to the insurance policy proceeds discussed herein, and find that Defendant Ramirez is not entitled to same, for the reasons set forth herein;

b.      Issue an injunction prohibiting Nominal Defendant Prudential from distributing the proceeds to Defendant Ramirez, or, in the alternative, interplead the proceeds into the Court Registry; and

c.      Make such other and further relief as may be proper.

Respectfully submitted,

LAW OFFICE OF BENJAMIN HANCOCK, P.C.

*/s/ Benjamin Hancock*
By: Benjamin Hancock
One Towne Centre
6121 Indian School Road NE, Suite 206
Albuquerque, NM 87110
Phone: 505.508.4343
Fax: 505.508.4323
ben@benhancocklaw.com
*Attorney for Plaintiff Edwin Quinones*